PETER SCHULTZ *et al.*, Respondents, v. JOSEPH W. MOON *et al.*, Appellants.

**St. Louis Court of Appeals, January 7, 1889.**

1. **Damages**: PLEADING : PROXIMATE CAUSE. In an action for damages from the defendant's negligence in keeping an elevator hatchway in a dangerous condition, so that the plaintiff's minor son fell through and was killed, a petition which, after setting forth in general terms the acts and omissions constituting negligence, proceeds to aver, "that in consequence of the aforesaid wrongful acts, neglect and default of defendants, and without fault on his part, the said William Hansenborg * * * fell into and through the hatchway," etc., states with sufficient definiteness that the negligence was the proximate cause of the injury.

2. **Practice, Trial**: MOTION FOR CONTINUANCE. There is no abuse of the court's discretion in denying an application for a continuance, when the subpoena for the absent witness was issued only on the day before the trial, and no inquiry touching his whereabouts had been made by the applicants, or their counsel, until that day.

3. **Practice, Appellate**: ASSIGNMENT OF ERRORS. An assignment of errors in admissions and refusals of evidence by the trial court which specifies the matters of complaint no further than by reference to the pages of the record on which they appear, is not the proper way for directing the attention of an appellate court to the errors complained of, and submits nothing to the court for consideration under the rules of appellate procedure.

4. **Negligence**: INJURY : PROXIMATE CAUSE. When the evidence tends to show that the defendants were negligent in regard to the condition of their hatchway through which the plaintiffs' son fell, and in keeping the boy at work about it under circumstances of peril, the fact that no witness saw the boy fall does not tend to negative a connection, by way of proximate cause, between the defendants' negligence and the injury done.

5. **Contributory Negligence**: WORKING IN DANGEROUS POSITION. It cannot be said, as a matter of law, that a boy sixteen years of age who works under orders from his superiors in a possibly dangerous position is, in the event of injury, guilty of contributory negligence.

6. **Instructions:** MEASURE OF DAMAGES. An instruction that the jury, if they find for the plaintiff, should assess her damages at such sum, not exceeding five thousand dollars, as they may deem fair and just, with reference to the necessary injury resulting to her from such death, is not open to the objection that it permits the jury to add a sum, by way of *solatium*, to the substantial damages shown in evidence.

*Appeal from the St. Louis City Circuit Court.*—HON. GEORGE W. LUBKE, Judge.

AFFIRMED.

*Edmond A. B. Garesché,* for the appellants.

The trial court erred in overruling in part defendants' motion to make plaintiffs' petition more definite and certain; in overruling defendants' motion to strike out parts of plaintiffs' petition, and in subsequently allowing the introduction of any evidence under the petition. *Pier v. Heinrichoffen,* 52 Mo. 333; R. S., 1879, sec. 3511; *Strain v. Strain,* 14 Ill. 368; *Holden v. Railroad,* 30 Vt. 302; 2 Thompson on Neg. 1248; Deering on Neg. sec. 398; *Young v. Lynch,* 66 Wis. 514; *Hawley v. Executor,* 90 Ind. 160; *Kelsey v. Jewett,* 28 Hun, 51; 2 Thomp. on Neg. sec. 24, p. 1246. The trial court erred in overruling defendants' motion for a continuance. The trial court erred in admitting incompetent, irrelevant and immaterial evidence offered by plaintiffs, and in refusing competent, relevant and material evidence offered by defendants. The trial court erred in refusing instruction of non-suit offered by defendants at the close of plaintiffs' case. *Spiva v. Mining & Mill Co.,* 88 Mo. 68; *Callahan v. Warne,* 40 Mo. 131; *Sorensen v. Paper & Pulp Co.,* 56 Wis. 338; *Steamship Co. v. Clare,* 127 U. S. 45; *Moore v. Railroad,* 28 Mo. App. 622. The trial court erred in giving improper instructions at the instance and upon the request of plaintiffs; in refusing proper instructions asked by defendants, and

Schultz v. Moon.

in giving improper instructions of its own motion. *Owen v. Brocksmidt*, 54 Mo. 285 ; *Rains v. Railroad*, 71 Mo. 164 ; *Parsons v. Railroad*, 94 Mo. 286. The mere fact that defendants were negligent affords no ground for an action, unless "followed by an injury, and is its proximate cause." *Stepp v. Railroad*, 85 Mo. 229 ; *Brown v. Railroad*, 20 Mo. App. 222. Nor the fact that defendants were guilty of negligence followed by an injury does not make them liable unless the injury was "occasioned by the negligent act." *Harlan v. Railroad*, 65 Mo. 22. "There are no presumptions in plaintiffs' favor. To authorize a verdict the damages must be shown to be the natural, probable and proximate result of defendants' negligence." *Railroad v. Burney*, 71 Ill. 391. "For to create a liability there must be a direct connection shown between the negligent act and the injury." *Moberly v. Railroad*, 17 Mo. App. 518 ; *Stoneman v. Railroad*, 56 Mo. 503. And as has been said *supra* the mere fact that defendants have been guilty of negligence followed by an injury does not make defendants liable. The connection of cause and effect must be established. *Harlan v. Railroad*, 65 Mo. 25 ; *Holman v. Railroad*, 62 Mo. 562. And where, as in the case of bar, plaintiffs' evidence fails to establish it affirmatively the court should take the case from the jury by a peremptory instruction. *Spiva v. Mining Co.*, 88 Mo. 68.

*Kehr & Tittmann*, for the respondents.

William Hansenborg was upon the premises of appellants as the servant of their servant, doing their work. It was the duty of appellants to keep the premises used in the prosecution of their business in a reasonably safe condition, and the omission to do so is negligence. Roberts & Wallace on Duty and Liability of Employers ( 3 Ed. ) 119 ; Wood on Master and Servant

( 2 Ed. ) secs. 334, 337, p. 695 ; *Indermaur v. Dames*, L.
R. 1 C. P. 274 ; s. c. L. R. 2 C. P. 311 ; *Hayward v.
Merrill*, 94 Ill. 349 ; *Nagel v. Railroad*, 75 Mo. 653 ;
*Walsh v. Trans. Co.*, 52 Mo. 434 ; *Welch v. McAllister*,
13 Mo. App. 89 ; 1 Thomp. on Neg. 307 ; 1 Addison on
Torts ( 6 Ed. ) 320 ; Shear. & Red. on Neg. ( 3 Ed. ) sec.
498, p. 591 ; *Selinas v. Vermonts*, 15 Atl. Rep. 117. To
provide a safe place where the servant can work is an
obvious duty of the employer. *Whalen v. Church*, 62
Mo. 326. The allegations of the petition charging negli-
gence are sufficiently specific. *Schneider v. Railroad*,
75 Mo. 295 ; *Mack v. Railroad*, 77 Mo. 232 ; *Crane v.
Railroad*, 87 Mo. 595. Defendants' application for con-
tinuance was properly overruled. It made no showing
of diligence and was otherwise defective. The matter,
moreover, was one of discretion with the court below.
Inasmuch as appellants' brief does not point out wherein
the rulings of the court below in the admission or exclu-
sion of evidence were erroneous, we cannot reply to the
point. The instruction given for plaintiffs, so far as the
right of recovery is concerned, is fully sustained by the
authorities cited under the first head of this brief, and is
based on them. The assumption that plaintiffs should
have been non-suited because no eye-witness saw the
deceased fall into the hatchway, is wholly unfounded.
The negligence of the defendants and the injuries to the
deceased being shown, it was competent to infer that the
latter were occasioned by the former, and the jury have
so found. *Keim v. Trans. Co.*, 90 Mo. 314 ; *Railroad
v. Dunn*, 78 Ill. 197 ; *Johnson v. Railroad*, 20 N. Y. 65.
So much of plaintiffs' instruction as defines the measure
of damages is in strict keeping with the decisions in this
state. *Owen v. Brocksmidt*, 54 Mo. 285 ; *Nagel v. Rail-
road*, 75 Mo. 653 ; *Grogan v. Foundry Co.*, 14 Mo. App.
587–8 ; s. c. 87 Mo. 321 ; *Parsons v. Railroad*, 94 Mo.
286, 300.

THOMPSON, J., delivered the opinion of the court.

This is an action for damages sustained by the plaintiff, Margaretha Schultz, in the death of her minor son, through the alleged negligence of the defendants. The petition, after setting out the relation of the plaintiff to the deceased, avers " that, on and prior to the eleventh day of June, 1887, the defendants were in possession and control of the premises number 1723 and 1725 Morgan street, in the city of St. Louis, and were carrying on in said premises the business of carriage manufacturers, under the name of Moon Bros. ; that the building so occupied by them was five stories high, with a hatchway or elevator opening on each floor, such hatchways or openings being directly one above the other and extending in direct line from the ground floor to the top floor of said building, and that the same, with the apparatus and appliances therein, were used by the defendants, at the time aforesaid, in their said business for hoisting and lowering goods and materials to and from the several floors of said building ; that a movable lid or covering for each of said hatchways or elevator openings was part of said apparatus, and that each lid had an apron attached to it constituting part of it ; that it was the duty of defendants to put and keep their said premises and said hatchways and appliances in safe condition, and to protect from injury all persons having lawful business upon said premises. And plaintiffs state that on said eleventh day of June, 1887, the said William Hansenborg was assisting in the work which was being done for defendants upon the aforesaid premises, and was rightfully upon said premises ; that at the time he was injured, as hereinafter stated, the several elevator openings or hatchways aforesaid were open and uncovered through all of said floors, and were in nowise fenced, guarded or protected ; that they were dangerous, and so known to be to defendants ; that

the aforesaid lids or coverings and said openings were defective and improper in general design, and were unfit to be used in premises in which persons were at work, and were passing to and fro ; that said William Hansenborg was unfamiliar with and inexperienced in the use of said elevator and of said lids or coverings, and owing to his youth and inexperience was unaware of the danger thereof, and that defendants failed to instruct him in the use of said elevator, apparatus and appliances, although as plaintiffs are advised it was their duty so to do ; that defendants had posted or given no notice or warning concerning the working of said elevator, or of said lids, or of the danger of said hatchways or openings ; that they permitted and required work to be done upon said lids or coverings, and had no person to attend to said elevator or to the opening or closing of said hatchways or the handling of said lid ; that in consequence of the aforesaid wrongful acts, neglect and default of defendants, and without fault on his part, the said William Hansenborg, on the said eleventh day of June, 1887, fell into and through the hatchway or opening on the fourth floor of said building and through the several open hatchways of the floors below, falling from the fourth floor to the ground floor of said building, and receiving mortal injuries ; that he languished until the following day, June 12, 1887, on which day he died from the injuries so received as aforesaid ; that he was a minor and unmarried at the time of his death.    Plaintiffs say that they are advised that, by reason of the facts aforesaid, an action has accrued to the plaintiff, Margaretha Schultz, the surviving parent of said William Hansenborg, to ask and have of the defendants five thousand ( 5000 ) dollars damages, for which sum, together with their costs of suit, plaintiffs pray judgment.''

The answer, after a general denial, averred that the deceased, without authority, undertook to close the

elevator hatchway, and did so in so reckless a manner as to be guilty of contributory negligence. This new matter was put in issue by a reply, and it is to be observed that there is no evidence in support of it.

The evidence showed that the building occupied by the defendants, was five stories high, and that the elevator or hatchway down which the boy fell was in the northeast corner of the building. It consisted of an opening cut in each floor, which opening was thirteen and one-half feet long from east to west, and seven feet wide from north to south. These openings are of the same size, one above the other, and run through the five successive floors in a direct perpendicular line. A lid or cover weighing from five hundred to seven hundred pounds, was employed in connection with each opening, which, when in position, covered the opening entirely and replaced the floor. These lids moved on iron rails running along the north and south sides of the opening and were drawn out to the west. The west end of the lids consisted of an apron or flap thirty inches wide. The lids were kept drawn out half-way, so that the ropes by which the hoisting and lowering was done could hang in the open space. To economize space, so much of the lid as lay upon the floor when the lids were drawn out, was used for the purposes of the business.

Among the employes of the defendants was Frank Hansenborg, who was a carriage blacksmith working for them by the piece. Four days of the week he was at work in the blacksmith-shop on the lower floor, and on the other two days of the week he was engaged in "ironing off" buggy-bodies on the fourth floor. The fourth floor was divided into two parts by a board partition running from east to west. The paint-shop was in the southern compartment, and the northen part contained the elevator or hatchway and was used for storing buggy-bodies, which were piled as high as the ceiling, occupying the entire floor, except a small space

around the north, south and west sides of the elevator opening. On its east side the opening abutted against the east wall of the building. One of the defendants, Joseph W. Moon, took Frank Hansenborg to the fourth floor, where the iron gear was to be put on the buggy-bodies, and, as the evidence tended to show, directed him to work on the hatchway lid while it was half drawn out, leaving the other half of the hatchway open. It was necessary to use the lid as the place for doing this work, because all the other space on the floor was occupied, — buggy-bodies being stored there so close to the elevator as to leave scarcely room enough to pull back the lid. The apron or flap was, when drawn out, turned down on the lid, and the blacksmith's trestles were so placed as to have two feet on the apron and the other feet on the balance of the lid. In this way from two to three trestles were placed on the lid, and the work of ironing the bodies was done. There was evidence tending to show that Mr. Moon was aware of the fact that the work was thus done and that he regarded the place as dangerous on account of the hatchway opening. Some years before, a boy had fallen through the hatchway from the third floor, and the defendants were aware of the fact. The defendants' foreman had also heard that an anvil had fallen through the hatchway.

Somewhat more than three weeks before the accident which is the subject of this action, Mr. Moon said to Frank Hansenborg, the brother of the deceased, that he must have more work out of the place that Frank was in charge of. The latter said that he could not possibly do more unless he should hire help. Mr. Moon thereupon said that he might hire help. Hansenborg first tried a boy that one of the Moon's brought to him and then hired his brother, William Hansenborg, the deceased. William worked with him three weeks with the knowledge of Mr. Moon.

There was no fence, guard or protection of any kind

around the hatchway opening on the fourth floor. No notice was posted, nor was any warning given as to the danger of the hatchway, nor were any instructions given as to the manner of handling the lid. About midway in the rails on which the lid moved there was a slight indentation or depression, but no stop or catch of any kind. When shoved back, its own momentum would carry the lid back the full length, unless some force was brought to bear to stop it midway. Four taps of the bell were the signal to pull back the lid its full length on the fourth floor. When the signal was given, it was usual for the person nearest to it to pull it back, though there is evidence that it was the duty of a boy in the paint-shop to do so. When the lid was pulled back its full length, the blacksmith and his assistant (that is, Frank Hansenborg and his brother) would stop work for the time, but would leave their trestle in position on the lid.

On the day of the accident, at about 11 A. M., the signal was given to open the hatchway its full length on the fourth floor. The lid had been out half-way all that morning, and Frank Hansenborg and the deceased were at work on it. They stopped at the signal, and Frank looked down the hatchway and saw it open through all the floors, and saw that a lot of material was coming up to the fifth floor. He needed some bolts that were on the first floor and took the stairway to go down. As he reached the lower floor he heard a crash and saw his brother, who had fallen through the hatchway from the fourth floor, a distance of from forty to fifty feet. The boy was mortally injured and died the following evening.

It is not necessary to state any of the evidence bearing upon the question of damages, because the jury returned a verdict in the sum of eight hundred dollars only, which was plainly within the limits of the

evidence.   The defendants moved to require the plaintiff
to make the petition more definite and certain, which
motion was overruled.   We see no error in the ruling.
The   petition   states   with   reasonable   certainty   the
grounds on which the plaintiffs predicate their right of
recovery.   The principal objection urged against it is
that it does not show with sufficient definiteness that the
accident occurred through the negligence of the defend-
ants, that is, that, although there may have been negli-
gence in a general sense, yet the petition does not state
facts which show that such negligence was the *proximate
cause* of the injury.   But we think that this is alleged
with sufficient definiteness for the purpose of a pleading,
in the following language :   "That in consequence of
the aforesaid wrongful acts,   neglect and default of
defendants and   without   fault   on his part, the said
William Hansenborg, on the said eleventh day of June,
1887, fell into and through the hatchway," etc.

The next assignment of error is that the court abused
its discretion in refusing the defendants' application for
a continuance, based on the ground of the absence of a
witness named Coffer.   It appears that the subpoena for
this witness was issued only the day before the trial,
and that no inquiry was made touching his whereabouts,
by either the defendants or their counsel, until that day.
Under such circumstances we cannot say that the court
abused its discretion in holding that adequate diligence
had not been used.

The next assignment of error is that the court erred
in admitting incompetent, irrelevant and immaterial
evidence offered by the plaintiffs, and in refusing com-
petent, relevant and material evidence offered by the
defendants.   The specification under this assignment of
error is :   "The objections and exceptions made to the
action of the trial court, in admitting and refusing evi-
dence offered by the plaintiffs, and objected to by the
defendants, appear particularly on pages 29, 30, 34, 43,

63, 64, 65, 72, 73, 86, 88, 111, and 127 of the record. Those which I desire particularly to call the attention of this court to are to be found on pages 43, 63, 64, 65, 72, 73, and 86.'' This is not the proper way to direct the attention of an appellate court to the errors of which the appellant complains. The appellant cannot send the court upon a search through the record for supposed errors by such a general and sweeping assignment. It is the duty of the party assigning errors to point out specifically the ruling to which he objects, and to state the ruling, and the manner in which it occurs, so that the court can understand it without entering upon an exploration of the record. The court will, of course, verify the statement from the record. The specifications under this assignment of errors submit nothing to the court for consideration under the proper rules of appellate procedure.

The last two assignments of error are considered together in the appellants' printed argument. They are, that the court erred in refusing an instruction, in the nature of a non-suit ; in giving improper instructions at the request of the plaintiffs; in refusing proper instructions requested by the defendants, and in giving improper instructions of its own motion. It is not necessary to set out the instructions in order to understand the complaint which is made under this head. The substance of it is that, as no witness saw the deceased fall,—as there was no distinct evidence as to how he came to fall into the opening,—there was no evidence connecting the negligence of the defendants with the accident, showing that it was the proximate cause of the injury. It is a sound view that there must be in every action of this kind substantial evidence connecting the negligence of the defendant with the injury complained of. Where this gap is entirely left open, the verdict will not be permitted to stand, because we have often said that we will not permit verdicts to stand which are based upon mere

conjecture or surmise.  But there was here evidence
tending to show general negligence on the part of the
defendants in putting the boy to work upon the flap of
the deep, unguarded and dangerous aperture ; for by
authorizing his brother, Frank Hansenborg, to employ
him to work there, they stand in the same position as
though they had employed him in person.  It may be true
that, in a moral sense, the brother is more directly respon-
sible for what happened to the deceased than the defend-
ants, but the negligence of the brother cannot be
imputed to the deceased so as to bar a right on the part
of the plaintiffs to recover.  There were, then, facts in
evidence on which the jury were authorized to find that
the defendants had been negligent.  On the other
hand, there was no evidence of contributory negligence
on the part of the deceased, except the general evidence
that he consented to work in that dangerous position.
But it cannot be said, as matter of law, that a boy of
sixteen years of age would necessarily have such an
understanding of the danger as would amount to that
contributory negligence which would preclude a recovery
in case of his death or injury.  The law in these cases
proceeds upon humane principles, and will excuse the
youth and inexperience of persons whose situations in
life may compel them to work in dangerous places in
order to earn their daily bread.

The argument on behalf of the defendants, then,
seems to resolve itself into this, that since no one saw
the accident, there was no material from which the jury
could infer that it resulted from the negligence of the
defendants.  The single case of *Buesching v. St. Louis
Gaslight Co.*, 73 Mo. 219, shows that this contention is
not well founded.  The defendant had left a deep and
insufficiently guarded excavation in the highway in
front of one of its buildings.  It consisted of a stone
stairway leading from the sidewalk down to the base-
ment.  The body of Buesching was found in the morning,

lying in the excavation, with his neck broken. He was last seen alive in a barber-shop near the excavation, at about nine o'clock of the previous evening. The excavation had existed for many years, and the evidence showed that Buesching was well acquainted with it. It was nevertheless held (reversing this court) that the trial court committed no error in overruling an instruction in the nature of a demurrer to the evidence. There, as here, the negligence of the defendant was proved; the negligence of the deceased could not be presumed in the absence of evidence; and his widow was none the less entitled to recover, from the fact that no one saw the accident and that there was no evidence as to the precise manner in which he came to fall into the excavation. That case was in the hands of able counsel on both sides. It was thoroughly contested, and the decision of the supreme court in it is one of the leading cases in our books on the subject of negligence. We could not support the argument which is now pressed in behalf of the defendants without entirely disregarding the principle upon which that case was decided.

In these assignments of error the learned counsel for the appellants raises an objection to the single instruction which was given as to the measure of damages. This instruction told the jury that, in case they should find for the plaintiff, Margaretha Schultz, they should "assess her damages at such sum, not exceeding five thousand dollars, as they may deem fair and just, with reference to the necessary injury resulting to her from such death." It is objected that this left the jury to grope in the dark with reference to the proper elements of damage to be awarded, and that the court should have advised the jury that they could give nothing by way of a *solatium* for mental anguish, distress, loss of society, etc. The instruction would have been better if it had drawn the attention of the jury to the separate elements of damage allowed by the law in such

a case, the funeral expenses and the probable net earnings of the child during the remaining period of his minority. But we do not think the instruction is open to the objection that it left the jury at liberty to give damages by way of a *solatium*. There was evidence in the case as to the element of pecuniary loss which the plaintiff had sustained in the death of her son. The testimony showed that the cost of the funeral was $173.00; that, when the boy worked with his father, he had earned as much as two dollars a day, though when working with his brother Frank at the time of his death he was earning but five dollars a week. With this testimony before them, the jury could hardly have regarded a *solatium* as coming within the definition of "necessary injury," employed in the above instruction. The case of *Parsons v. Railroad*, 94 Mo. 286, to which we are referred, does not help the contention of the defendants. The court was there discussing the *quantum* of damages which the jury gave. The deceased in that case was a youth employed as a railroad brakeman, and was within thirty months of his majority. The jury had returned a verdict for five thousand dollars. The court conjectured that his earning capacity could not exceed fifty dollars per month, and that his funeral expenses could not have exceeded two hundred dollars, and could not see any basis in the evidence for an award of more than eighteen hundred dollars damages. On a similar line of reasoning, supposing, as the jury were entitled to suppose, that the earning capacity of this youth would increase, it must be said that the award of damages was inadequate, and was probably the result of a compromise on the part of the jurors upon the question whether there should be any recovery at all. It is true that juries reason so imperfectly that it is very unsafe to look to the amount of the verdict for the purpose of seeing whether the jury have been misled by instructions touching the measure of damages.

But where the elements of damage are fixed by law and the verdict is plainly within the limit which the jury, under the evidence, were entitled to give, and the instruction is not clearly erroneous and misleading, the judgment ought not to be reversed because it may not have been sufficiently specific. If the defendants had desired a more specific instruction on the subject of damages they should have requested it at the time.

The judgment of the circuit court will be affirmed. All the judges concur.