Filed Feb. 27, 1895.

———————◆———————

No. 16,816.

THE LAKE SHORE AND MICHIGAN SOUTHERN RAILWAY COMPANY *v.* McINTOSH, ADMINISTRATOR.

RAILROAD.—*Negligence.*—*Liability for Acts of Servants.*—*Proper Instructions.*—An instruction to the jury, in an action against a railroad company for negligence, that they should inquire whether the injuries resulting in death "were produced by the negligence of the defendant, its agents, servants or employes," does not amount to a statement requiring the jury to say or find whether the injuries were caused "by the negligence of the defendant or by its agents or servants or employes."

SAME.—*Defective Public Crossing.*—*Negligent Management of Train.*—*Combination of the Two Conditions to Produce Injury.*—If the plain-

262    SUPREME COURT OF INDIANA,

Lake Shore and Michigan Southern Railway Co. v. McIntosh, Admr.

tiff be injured by reason of the negligent construction and mainte-
nence of a public highway crossing by the defendant railroad, taken
in connection with the negligent running and management of its
trains at such crossing, then there may be a recovery, the plaintiff
being without fault, although neither the defective crossing nor the
negligent running and management of the train, taken by itself,
would have brought about the same or a like result.

Same.—*Defective Highway Crossing Constructed by Former Owner of
Railroad.—Maintenance of Old and Defective Crossing.*—The fact that
the former owners of a railroad constructed a defective crossing does
not authorize or justify the succeeding owners to maintain and use
it in such defective condition, and the fact that the crossing was
constructed many years before the time of the injury occasioned by
its defective construction, can not lessen the liability of the railroad
company, but, on the contrary, increases such liability.

Same.—*Traveler Approaching Crossing.—Degree of Care.—Reciprocal
Duties of Company and Traveler.*—A traveler approaching, on a pub-
lic highway, a railroad crossing, must use such care to avoid injury
as men of common prudence and intelligence would ordinarily use
under like circumstances. The amount of care required depends
upon the risk of danger. The rights and duties of railroad compa-
nies and travelers upon highways crossing them are mutual and
reciprocal, and no greater degree of care is required of the one than
of the other. Each must use ordinary care in proportion to the dan-
ger.

Same.—*Highway Crossings, Repairing.—Restoration of Highway to Full
Width.*—A railway company crossing a highway must restore it to
its original condition as nearly as possible, after its railroad is con-
structed across it; and thereafter keep such crossing in good con-
dition. It must restore the whole of the road, however wide; it is
not enough for it to put in order the part usually traveled.

Same.—*Running Train at Dangerous Crossing.*—A railroad company
must run its trains over a crossing difficult of passage and hazardous
with greater caution, to prevent injuries to travelers.

Negligence.—*Husband and Wife Riding in Wagon.—Injury at Railroad
Crossing.—Imputing Husband's Negligence to Wife.*—A wife riding in
a conveyance driven and controlled by her husband and negligently
injured at a highway crossing by the locomotive of the defendant,
running on its railroad, if she herself is free from fault, is not pre-
vented from recovering damages, although her husband be guilty of
negligence. His negligence can not be imputed to her.

Instructions.—*Construing.—Meaning of Words Used in.*—Words in an
instruction to a jury must be taken in their plain and usual mean-
ing. Verbal niceties and refined grammatical distinctions are not

to be resorted to if the meaning of the language used is plain to a common intent.

SAME.—*Injury of Traveler at Highway Crossing Railroad.*—See opinion for instructions approved.

PRACTICE.—*Evidence.*—*Motion to Strike Out Question or Answer.*—*Failure to Object.*—If no objection be made to a question (or answer), a motion to strike it out comes too late, even if the evidence be irrelevant or otherwise improper.

From the Steuben Circuit Court.

*J. Morris, R. C. Bell, J. M. Barrett* and *S. L. Morris,* for appellant.

*F. S. Roby, W. L. Penfield* and *J. F. Shuman,* for appellee.

HOWARD, J.—This action was brought by the appellee to recover damages for the death of his intestate at a railway crossing over a public highway. The accident was caused, as alleged, by the negligent construction of the crossing and by the negligent running of appellant's train.

The jury returned a general verdict for the appellee, and also answers to interrogatories.

Of the errors assigned but one is discussed in the briefs of counsel, the overruling of appellant's motion for a new trial.

Fault is first found with the instructions of the court. The second instruction requested by the appellee, and given by the court, was as follows:

"This case presents three questions of fact, amongst others, for the consideration of the jury.   1st.   Was the death of Frances Anthony caused by injuries received by her on the 5th day of August, 1891, and produced by a locomotive and cars of the defendant coming in collision with the vehicle in which decedent was riding on said day, as alleged in the complaint?   2d.   Were such injuries to said decedent produced by the negligence of the

defendant, its servants or its employes? 3d. Did the negligence of said deceased woman contribute to such injuries and death?"

Counsel say this instruction leaves it to the jury to determine the question of law as to what is alleged in the complaint; that it was the duty of the court to construe the complaint, and to tell the jury what was alleged.

We think the court in this instruction distinctly informs the jury what the facts are, " as alleged in the complaint." The instruction is an exact copy, with change of names and dates, of instruction number 4, as given by the court in the *Indianapolis, etc., R. R. Co.* v. *Stout, Admr.*, 53 Ind. 143, which was approved by this court.

Similar criticism is made by counsel of instruction number 5, as requested by appellee, and given by the court. Further objection is made to the following clause of this instruction: "You will inquire whether such injuries were produced by the negligence of the defendant, its agents, servants or employes."

Counsel gravely suggest that this requires the jury to say whether the injuries were caused "by the negligence of the defendant, or by its agents or servants or employes."

We do not think the words interpolated by counsel were suggested to the mind of the jury by the language of the court. The company could act only by its officers, agents, servants or employes. The instruction evidently, and in the plainest language, refers to such instrumentalities, and not to independent action of agents and others, for which the company would not be liable. Words in an instruction to a jury are to be taken in their plain and usual meaning. Verbal niceties and refined grammatical distinctions are not to be

resorted to in such cases, provided the meaning of the language used is plain to a common intent.

The fourth instruction requested by the appellee, and given by the court, was as follows:

"If you find from the evidence that Frances Anthony was killed by the negligence of the defendant in constructing or maintaining the crossing of the highway described in the complaint, or by reason of obstructions wrongfully placed or maintained in such highway by defendant, or by the negligence of the defendant's servants in the management of said train, and that the deceased was not guilty of negligence on her part contributing to the injury, and that her death was caused by the injury, and if you find the other material allegations of the complaint proven, then your verdict should be for the plaintiff."

Much fault is found with this instruction. It is, however, almost identical with instruction No. 6 given in *Indianapolis, etc., R. R. Co.* v. *Stout, Admr., supra,* to which no objection was made.

In objecting to the instruction before us, it is first said that "The complaint does not allege that the plaintiff's intestate was killed by the defendant's negligence in the construction of said crossing. On the contrary, it shows that the crossing was constructed many years before she was killed, and that she was not killed by its construction."

We think counsel are mistaken in this. The complaint, in fact, sets out very fully and in detail various negligent acts of appellant in constructing and maintaining the crossing.

It is alleged, amongst other things, "That said highway was not crossed at right angles by defendant's said railroad track at said place, but that defendant's said track had wrongfully, negligently and unlawfully been

constructed, and was, by defendant, at all times herein named, unlawfully, wrongfully and negligently maintained and kept, in and along said highway, for a distance of two hundred and fifty feet."

The particulars of such obstruction and negligent construction and maintenance of the crossing are set out at great length and in detail: That a ditch over the crossing, from four to six feet deep, and four feet wide, was maintained; that the earth from said ditch was banked up on the highway, thereby rendering the highway impassable, except for a space of about ten feet, which was covered with planks, the obstruction extending east and west of the railroad track a distance of twenty feet; that a board fence was maintained by appellant in said highway, one hundred and fifty feet long, and extending from the east line of the highway to the center thereof, appellant using for its own purposes all of the highway east of the fence, and thus wrongfully reducing the width of the highway from forty to twenty feet, and not leaving room for the public to pass in safety; that the appellant had suffered the road bed of the highway and the traveled part thereof to be washed away into said ditch, thus making the roadway dangerous and preventing vehicles from being turned away from the track and escaping from an approaching train after the same could be discovered; that appellant had permitted said washout to remain in said road bed for a long time prior to the accident, with full knowledge of its dangerous condition; that appellant had planted a post in said highway fifteen feet west of the track, thereby preventing vehicles approaching the track from being turned therefrom in time to avoid an approaching train after it could be observed in coming from the north, the point from which appellee traveled; the appellant had unlawfully and negligently failed to restore said highway to its for-

NOVEMBER TERM, 1894.        267

Lake Shore and Michigan Southern Railway Co.,v. McIntosh, Admr.

mer state after its said track was constructed across the same, or so as not to impair its usefulness unnecessarily or to injure its franchises, but wrongfully left and kept it in its narrow, obstructed condition, thus imperiling the lives of travelers upon the highway; that the highway north of the crossing descended towards the same rapidly, and because of the steep descent and the smoothness of the roadway up to the railroad track, it became a matter of great difficulty to stop a vehicle approaching from the north until at or upon the track; that appellant had therefore wrongfully diverted said highway so that no opportunity was afforded a vehicle from the north to escape or turn from said track on discovering a train approaching; that the railroad track from the north approached the crossing through a deep cut, the embankments from either side of which wholly obscured and concealed the engine and cars from the view of a person upon the highway north of the crossing; that the train was farther obscured by high grass, weeds and bushes suffered to grow along the west side of said track by appellant, also by the board fence aforesaid; that the ground west of the track was covered with timber and growing trees, which still further concealed the approach of a train; that from these causes not only was the view of a train obscured, but also its sound deadened and broken, so that the engine and cars could not be seen or heard until very near the crossing; that the crossing was further rendered dangerous by the steepness of the grade north thereof down which the approaching train came, so that it was difficult to avoid a high rate of speed over the same; that by reason of the things stated the crossing was a place of great danger to travelers lawfully approaching from the north and using the highway with all care; that the appellant had full notice of all these facts and of the danger of surprising

travelers upon the crossing, which danger had been frequently called to appellant's attention; that by reason of appellant's unlawful and negligent acts and omissions, as herein set out, appellee's decedent was prevented from discovering said approaching train; that by reason of the unlawful, negligent and wrongful acts and omissions of the appellant, as herein set out, the said decedent was run over and upon by said train at said crossing, and without fault or negligence upon her part was bruised, crushed and killed thereby.

The complaint, therefore, does allege, and very fully, that appellee's intestate was killed by appellant's negligence in the construction and maintenance of the crossing. The fact that the crossing was negligently constructed many years before the injury, and so maintained by appellant, can not lesson, but, on the contrary, must increase the liability of appellant.

Even if the crossing had been constructed by former owners of the railroad, the present owners, still maintaining and using the same negligently constructed crossing, would be liable for the wrong. *Louisville, etc., R. W. Co.* v. *Boney,* 117 Ind. 501; 1 Rorer Railroads, p. 38; Beach Railways, section 553; 2 Wood Railways, 977, 980; *Pettis* v. *Johnson,* 56 Ind. 139.

It is further objected to this fourth instruction that it is not alleged in the complaint that the intestate was killed by the maintaining of the negligently constructed crossing. We think from the brief abstract above set out from the complaint that counsel are also in error in this claim.

Another reason given for this contention is that the allegation of the complaint is, that she was killed by the collision, and that the jury so find, in answer to an interrogatory. Such argument can hardly be called candid. It is, of course, true that the injury was directly caused

by the collision; but if the collision was itself brought about, in part or in whole, by the negligent construction of the crossing, that would not in any manner exculpate appellant.

As a matter of fact, however, the complaint, after reciting the many details of the negligent construction and maintenance of the crossing and other negligent acts of appellant in the premises, alleges, "that by reason of the unlawful, negligent and wrongful acts and omissions of the defendant, as herein set out, the said decedent was run over and upon by said train at said crossing, and, without fault or negligence upon her part, was bruised, crushed and killed thereby." This is a sufficient allegation that the decedent was killed in consequence of appellant's negligent construction and maintenance of the crossing. Beach Cont. Neg. (2d ed.), section 32, note; *Schultz* v. *Moon*, 33 Mo. App. 329.

As to the answer of the jury to interrogatory, finding that the collision was the proximate cause of the injury, it may be sufficient to say that this was but a conclusion and can not affect the facts found as to all matters connected with the accident. It was for the jury to find the facts showing the condition of the crossing and surroundings, and everything else necessary in relation to the manner in which the injury was brought about; but it was for the court to draw the conclusion as to what one or more of such facts, if any, constituted the proximate cause or causes of the death of the intestate. *Louisville, etc., R. W. Co.* v. *Buck, Admr.*, 116 Ind. 566.

As to that clause of the instruction, "and if you find the other material allegations of the complaint proven, then your verdict should be for the plaintiff," it may be sufficient to say that, even if erroneous, it could not harm appellant. To require that the jury should find additional facts proven before they were justified in find-

ing for appellee, must be an instruction in favor of appellant. Appellant is, therefore, in no position to question the correctness of this part of the instruction.

Counsel for appellant complain of the following clause in the fifth instruction requested by appellee, and given by the court: "The law requires, and all that it does require is, that a person approaching a railroad crossing upon a public highway, shall use ordinary care to avoid injury." This clause, though thus arbitrarily torn from its proper connection in the instruction, is strictly the law. Taken by itself, it might be said not to be full enough, and might be misunderstood. But taken in the connection where it is found, and particularly when read with the other instructions, as it must be, it is quite correct. It is ordinary, not extraordinary or unusual care that must be taken. It should be "such care as men of common prudence and intelligence would ordinarily use under like circumstances. The amount of care required depended upon the risk of danger. In short, the obligations, rights and duties of railroads and travelers upon highways crossing them, are mutual and reciprocal, and no greater degree of care is required of the one than the other."

These words, found in the eighteenth instruction requested by appellee, and given by the court, shows what is meant by ordinary care as used in the clause of the fifth instruction complained of.

In the fifteenth of these instructions, also, the jury are told that, "when a person crossing a railroad track is struck and injured by a collision with a passing train, the fault is *prima facie* his own."

In the fourteenth instruction the jury are again told that the traveler must use "such care and caution as an ordinarily prudent person under like circumstances would have used."

Ordinary care is all that can be required, and if these terms needed any explanation, as that the care should be in proportion to the danger, that explanation was fully made in the remainder of the fifth, and in other instructions given. *Cleveland, etc., R. W. Co.* v. *Harrington,* 131 Ind. 426.

The seventh instruction requested by the appellee, and given by the court was as follows:

"If you find that the defendant, for an unreasonable and unnecessary length of time, kept and maintained its crossing of the highway in an unsafe condition, then it was bound, in operating its railroad, to exercise proper care to prevent the injury of a person, placed in danger by that wrong, in his lawful use of the highway."

This instruction counsel stigmatize as impertinent, having nothing to do with the case. It appears, however, that in the complaint it was alleged, and in the answers to interrogatories it was found that the condition of the crossing complained of had existed for a long time, and that it did exist at the time of the accident; that the crossing was therefore dangerous, and known to be so by the appellant.

It is clear, therefore, that the appellant, as well as the appellee, was bound to use ordinary care to avoid accident; care in proportion to the danger to be avoided. The care required of the traveler and of the railroad company is mutual; and in both cases this is ordinary care in proportion to the danger, as the jury were instructed further on. We think the instruction complained of was pertinent to the case, and that it was a correct statement of the law as relating to the issues and the facts.

The ninth of these instructions is objected to because by it the jury were informed that if the intestate was, at the time of the accident, riding in a conveyance driven and controlled by her husband, and if she was killed by

the negligence of the appellant, being herself free from fault, her husband's negligence, if he were guilty of any, can not be imputed to her. This, however, is the law. *Louisville, etc., R. W. Co.* v. *Creek, Admr.*, 130 Ind. 139; *Chicago, etc., R. R. Co.* v. *Spilker*, 134 Ind. 380.

For an extended and valuable discussion of this question, see 32 Am. Law Reg. 763.

The sixteenth of the instructions requested by appellee and given by the court was as follows:

"Negligence may be the proximate cause of an injury of which it is not the sole or immediate cause. If the defendant negligently encroached upon and maintained obstructions in the highway at the - crossings, which, concurring with the movement of a passing train, produced the collision resulting in the death of decedent, then such negligence would be a proximate cause of such collision within the meaning of that term as used in these instructions."

The first reason given by counsel to show that this instruction was wrong is that "The jury found the appellant not guilty of negligence in running the train."

Counsel have pointed out no such finding. The jury answered one hundred and twenty-four interrogatories, requested by appellant and appellee. We have carefully read these interrogatories and the answers thereto and can discover no such finding, nor indeed any answers from which such finding could be implied.

The jury find that the engineer, in approaching the crossing, kept a lookout; that from his place on the engine he could see the top buggy on the highway at a greater distance than the engine could be seen from the highway; that when the horse and buggy became visible and were first seen by the engineer they were turned eastward and in the act of driving towards the crossing, being within twenty-five to forty feet of and descending

to the crossing, the engine being then about 240 to 300 feet from the crossing; that the engineer could have, but did not, check the train by reversing his engine when he first saw the buggy, and so have given the driver from one to two seconds more time to avoid a collision by trying to check his horse or in urging him over the crossing; that the train was behind time and was running down grade at from thirty to thirty-five miles an hour; that the statutory signals were given, but owing in a manner to the condition of the wind or atmosphere, and also to the deep cuts through which the train ran, and to other obstructions, the sounds of the train were deadened and the signals, except the danger whistle at the crossing just before the collision, were not heard by the intestate or by the driver, her husband, although their sight and hearing were both good.

These, we think, are all the findings of the jury in regard to the manner of running the train, and it is too clear for argument that, taken separately or all together, they do not amount to a finding that the appellant was not guilty of negligence in the running of the train, even without considering the known dangerous character of the crossing.

But counsel say, in further objection to the instruction, that the answers to interrogatories, ten to fourteen, requested by the appellant, show that the alleged obstructions in no manner concurred in producing the injury.

These answers show that the traveled track of the highway was wide enough to enable the vehicle in which the intestate was riding to be driven along without any hindrance; that if the train had not struck the vehicle there was nothing to prevent the persons riding therein from passing over the crossing in safety, and that there

was nothing upon.the crossing, other than the train, by which the intestate was injured.

The answers plainly do not bear out counsel's contention.    Because the vehicle might have passed in safety over the crossing in the absence of the train, it does not follow, therefore, that the unlawful condition of the crossing did not concur with the movement of the passing train in producing the collision.    Two or more conditions that may each be harmless, or even beneficial, when taken separately, may yet be exceedingly hurtful, and even dangerous, when taken together.    It is the combination of ingredients that makes the deadly poison, although the separate elements may be quite innocent.

The jury found, expressly, in answer to other interrogatories, that many years before the building of the railroad the highway had been laid out sixty feet wide; that when appellant constructed its crossing it narrowed the highway and encroached upon it by its fences and by ditches and embankments, so that the passage way for the public over the railroad track was reduced to the width of sixteen feet; that said obstructions have been kept and maintained by the appellant at the crossing ever since the company has been operating the road; that the highway, ever since it was laid out, has been much used by day and by night by the traveling public; that at said crossing, and along the west side of the roadbed of said railway, there was at the time of the collision, and long before, a ditch maintained by appellant upon its right of way over two feet wide and over two feet deep; that over said ditch appellant maintained a culvert from twenty to thirty feet long; that at the time of the collision the plank at the south end of the culvert had become rotted and broken down; that along the

south of said culvert, and running along the south side
of said highway, upon the right of way of appellant at
said crossing, there was a washout over two feet wide
and over one and a half feet deep, at the time of the col-
lision, which appellant had allowed to remain for sev-
eral weeks before the collision; that at the west end of
the washout, and extending westward therefrom for
twenty feet, was an embankment projecting into the
highway and encroaching upon it at a distance of ten
feet from the south side of said highway, which embank-
ment was placed in the highway by appellant when said
crossing was constructed, and has been maintained there
by it ever since; that before and at the time of said col-
lision appellant kept and maintained its fences upon said
highway at said crossing; that owing to the narrowing
of the highway and the rotting of the plank on the cul-
vert, there was left only a passageway over said crossing
of from ten to thirteen feet for the public to pass over
said railway track from the west; that owing to the slope
downward when he was turning eastward to go over said
crossing, and owing to the embankment and railroad
signpost placed in said highway by the appellant, and
owing to the washout allowed by it to remain on its right
of way, the driver was prevented from turning around
or turning aside so as to avoid the collision; that if said
highway had not been encroached upon and made so
narrow at said crossing, and if it had been restored to its
original width and usefulness, the said driver would have
been able to turn aside and avoid the collision; that the
encroachment upon and the obstruction of the highway
at the crossing was one of the causes contributing to said
collision.

From these findings it is apparent that the jury did
not, as counsel seem to think, conclude "that there
were no obstructions 'concurring with the movement of

a passing train to produce the collision resulting in the death of said intestate.'' On the contrary, it is evident that the jury were of opinion that such obstructions did concur with the movement of the train in producing the collision and causing the death of the intestate.

Nor is it true, as an examination of the record shows, that the evidence does not support the same conclusion.

Daniel Anthony, husband of the intestate, and driver of the vehicle in which she was riding when killed, after testifying to the manner of their driving down the highway towards the crossing and of their stopping and listening and looking several times, and not hearing or seeing any train until they were about to go over the crossing, continued:

''Then I discovered the train coming down in a rush. I couldn't tell how far off it was because I hadn't much time to look or think after that. My horse noticed the train at the same time, about as quick as I did, and, as I remember, she leaped ahead and made a lunge and got scared of the cars, and I tried to hold her. The first glance that I took I saw that there was no sight to turn the horse; was then too far. If I turned off I would upset the buggy; if there had been space enough I might have jerked the horse around and turned, but I seen in what shape I was and that washout. I didn't look much, but I looked and took a glance and made up my mind it was not safe to turn or I would upset. I just held back on the lines and tried to hold the horse, but the horse was frightened and I could not hold him. He rushed ahead and appeared to be frightened and wanted to go through towards home. I couldn't hold him and he went on. In a short time, like a flash almost, the train was coming down and catched the horse. That is about all I recollect.''

It is clear, we think, that the pocket in which the intestate and her husband were caught was so narrowed and obstructed by appellant that escape was impossible when the train rushed upon them. There was not time to cross over. The fences, embankment, ditch, washout and broken culvert had so taken up the highway that they could not turn back without upsetting. The only thing possible was to attempt to hold the horse in his place, but with the maddened animal this, as we might expect, proved a vain attempt.

The road was originally constructed sixty feet in width. It was the duty of appellant to restore the highway "to its former state, or in a sufficient manner not to unnecessarily impair its usefulness or injure its franchises." (Section 5153, R. S. 1894, section 3903, R. S. 1881.) Special powers are given to railroad companies for this object, even the right to condemn other land for the purpose. (Section 5172, R. S. 1894, section 3915, R. S. 1881).

This, however, although thus imperatively required by statute, the appellant had utterly failed to do, except for a track on the approach to the crossing to the width of from ten to thirteen feet.

"Public highways," as it is emphatically said in *State* v. *Berdetta*, 73 Ind. 185, "belong, from side to side and end to end, to the public." They should be restored to their original condition as nearly as possible after a railroad is constructed across them. *Evansville, etc., R. R. Co.* v. *Carvener*, 113 Ind. 51; *Cummins* v. *Evansville, etc., R. R. Co.*, 115 Ind. 417.

"The company must restore the whole of a road, however wide," say Shearman and Redfield in their work on Negligence, section 415; and it is added, "It is not enough for it to put in order the part usually traveled."

It is well established that if, in constructing a rail-

road, a public highway is rendered unsafe for use, and if persons who use the same with due care are injured, the company will be liable. *Evansville, etc., R. R. Co. v. Crist,* 116 Ind. 446.

As to the care with which a railroad company should run its trains over such dangerous crossings, it is the rule that if, by reason of a railroad crossing, a highway is made difficult of passage and hazardous, the company must use greater caution to prevent injuries to travelers. *Hoggatt v. Evansville, etc., R. R. Co.,* 3 Ind. App. 437; *Continental Imp. Co. v. Stead,* 95 U. S. 161; *Guggenheim v. Lake Shore, etc., R. W. Co.,* 57 Mich. 488.

Not only also is it the duty of the railroad company to make the crossings of highways safe for public travel, but it is also its duty to keep the crossings in good condition. *Delzell v. Indianapolis, etc., R. R. Co.,* 32 Ind. 45; *Louisville, etc., R. W. Co. v. Smith,* 91 Ind. 119; *Indiana, etc., R. W. Co. v. Barnhart,* 115 Ind. 399; *Terre Haute, etc., R. R. Co. v. Clem,* 123 Ind. 15; *Louisville, etc., R. W. Co. v. Phillips,* 112 Ind. 59. See, also, *Indianapolis, etc., R. R. Co. v. Stout, Admr., supra.*

It seems clear, then, that the violation of its statutory duty by the appellant, in failing to construct and maintain the crossing in safe condition, was one cause of the injury to the intestate. Even, therefore, if there were no negligence in the running of the train, the appellant would still be liable for the injury. Shear. & Redf. (4th ed.), section 13; *Board, etc., v. Sisson,* 2 Ind. App. 311.

In the fourth instruction, requested by appellant and given by the court, the jury were told that if the approaching train could not be seen by the deceased without looking backward, then it became her duty before going upon the crossing to look back and to listen for the approaching train. To this the court added: "And

if its approach could have been learned by the exercise of reasonable care and diligence, under the circumstances, in time to avoid the injury, then the plaintiff can not recover." The words added by the court did not take anything from the force of the instruction, as requested by appellant. They rather emphasized the obligation of due care imposed upon the decedent.

In the seventh instruction requested by appellant, the court was asked to tell the jury that if the obstructions at the crossing were not in the traveled part of the highway, and if the collision was the proximate cause of the injury, then there could be no recovery. The court modified this instruction by adding the words: "Unless said obstructions were negligently maintained by the defendant, and were one of the causes contributing to the collision resulting in the death of Mrs. Anthony, without fault on her part."

We have already shown that this modification was proper, and even necessary. The jury found that the obstructions were a contributing cause of the collision, and that the obstructions had been wrongfully maintained by appellant.

In the first instruction given by the court on its own motion, the court, after stating to the jury that they should try to reconcile any conflict in the evidence, says, among other things, "then you will take into consideration the apparent intelligence of the witnesses, their apparent candor or want of candor, the interest, if any, such witnesses may have in the result of the case, etc." They are also told, "Neither are you to find a fact true or proven, or disproven, simply because more witnesses have testified on one side than on the other."

Counsel seriously object to these clauses of the instruction, but they offer no sufficient reason for their objection. The instructions so given correctly state the

law, as long established.    See Thompson Trials, section 2422, and other sections.    The instruction as a whole carefully informs the jury as to the credit which should be given to witnesses.    It is substantially the same as instruction number nine, as given in *Rogers* v. *Rogers*, 46 Ind. 1, of which, with other instructions in that case, Judge Pettit, in speaking for the court, said:    ''They very clearly and explicitly express the law on the points of which they speak.''

The witness Gilbert, after stating that at the time the train reached the whistling post it was about half-past four or five o'clock, was asked:

''Q.  Did you observe the time the train occupied in coming from that point down to the crossing?  A.  Yes, sir.

''Q.  What space of time?   A.  Twenty seconds.''

Counsel for appellant then moved to strike out the last question and answer, which motion was overruled.

There was no objection made to the question or answer, and the motion to strike out came too late, even if the evidence were irrelevant or otherwise improper, which does not appear.    *Brown* v. *Owen,* 94 Ind. 31; *Gurley* v. *Park,* 135 Ind. 440.

Finally counsel briefly discuss the evidence, and contend that it does not support the verdict on the question of contributory negligence.    Not only, however, was there evidence tending to support the verdict on this point, but we do not think any evidence given tended to show contributory negligence on the part of the intestate, or even on the part of her husband.

She was but little acquainted with the surroundings. They stopped at a point 1,400 feet from the crossing, on the highest point over the road, and both looked and listened for a train.    She herself rose up in the buggy and looked far back as well as forward.    The buggy was

Lake Shore and Michigan Southern Railway Co. *v.* McIntosh, Admr.

driven at a "jog trot." The horse was gentle and well broken. The driver, her husband, was of mature years and competent. She had a child on her lap, which she managed to save when she lost her own life. Both her own sight and hearing and the sight and hearing of her husband were good. As they continued towards the crossing they kept looking and listening, thinking that there might be a train approaching. The train was in fact three hours behind time, though of this they had no knowledge. When about 150 or 160 feet from the crossing, they again stopped and looked and listened; it was under a tree and they thought it was a good place to wait if a train should be passing; but they could hear or see nothing, and believed all was safe to go on. They continued to look and listen as they moved towards the crossing, but neither saw nor heard any indication of an approaching train until they entered upon the narrow part of the crossing, and saw the train three hundred feet away and approaching at the rate of thirty miles an hour. From the testimony of the husband, heretofore set out, we think that after they were thus caught, and their horse became frightened, escape became impossible.

We do not believe that any contributory negligence was shown; and we think that the negligence as to the construction and maintenance of the crossing is well shown, whatever may be true as to negligence in the running of the train.

The verdict for four thousand dollars does not seem excessive.

The judgment is affirmed.

Filed Nov. 1, 1894; petition for rehearing overruled Feb. 27, 1895.