## HAMILTON, Appellant, v. CROWE et al.

### Division Two, June 9, 1903.

1. **Physician as Witness.** A witness who had as a physician treated deceased for a number of years, is not, after that relation has been dissolved, incompetent to testify concerning a conversation he had with her, "as her friend," in regard to the making of a will, even though in the course of that conversation, in reply to her request if he thought she was going to die, he informed her that he did not think she would live longer than three weeks.

2. ————: THE MAKING OF A WILL. A physician may testify that he asked deceased if she had made a will, and that she replied that she had not. Such information obtained by him from her was not necessary to enable him to prescribe for her.

3. **Appeals:** ASSIGNMENT OF ERROR. It is the duty of appellant to point out specifically the errors of which he complains.

4. ————: ————: AS TO INSTRUCTIONS. An assignment that the court erred in giving certain instructions, without pointing out wherein they were erroneous, is no assignment at all.

5. **Wills:** REVOCATION: PRESUMPTION. Although there may be sufficient evidence that deceased executed a will in writing and that it was attested by two witnesses, still, if after such execution and attestation, the will was retained by deceased and could not after her death be found among her papers or elsewhere, the presumption is that she revoked it by destroying it, and this presumption stands in the place of positive proof.

6. ————: ————: ————: EVIDENCE AS TO SUCH PRESUMPTION: DECLARATIONS OF TESTATOR. This presumption is rebuttable, by declarations of the testatrix tending to show that if she did destroy her will, she did so without intent to revoke it, as if by accident or mistake; and may be re-enforced by the opposite side, by other declarations of the testatrix tending to show that she intended to revoke it, and it is also competent to show the state of her mind and affections. But such declarations can not be received to establish by oral testimony merely that she had revoked the will.

7. ————: ————: ————: INSTRUCTION: BINDING ADMISSIONS OF PLEADING. Where the proponent of a will in his petition alleges that after the execution of the will it was retained by testatrix among her papers, that admission is binding on proponent, and in view of such admission it is not error to instruct that, if the will could not be found among her papers after her death, the law presumes that she had destroyed it.

8. ————: ————: ————: ————: ————: EVIDENCE. Where the petition charges that after the will was executed it was retained by testatrix among her papers, and proponent introduces a witness who testifies that in her last sickness he saw that will in her trunk, which was in her room and under her control, it does not matter whether the partner of the deceased lawyer who wrote it can testify whether the will was among the bundle of papers which he turned over to her, or not, nor is it necessary in such case that the instructions require the jury to find that the will when last seen was in possession of testatrix. That necessarily follows from proponent's pleading and evidence.

9. Instructions: GENERAL RULE. The propriety or impropriety of every instruction depends upon the state of the evidence and the pleadings.

10. Witness: WHEN VERACITY GUARANTEED. The party that introduces a witness stands sponsor for all his answers made in his examination in chief and in legitimate cross-examination in regard to them.

11. ————: LAWYER: CUMULATIVE TESTIMONY. The testimony of a lawyer to the effect that he was consulted by testatrix a few days prior to her death in regard to the making of a new will which she never executed, offered for the purpose of showing the state of her mind and affections at the time, where the whole issue is whether or not she destroyed a prior will made by her, although incompetent, will not work a reversal of the judgment, if it was merely cumulative to a great mass of like evidence, and could not and evidently did not affect the verdict.

Appeal from Jackson Circuit Court.—*Hon. James Gibson*, Judge.

AFFIRMED.

*Leslie & Fontron* for appellant; *I. J. Ringolsky* of counsel.

(1) In this State it is improper and illegal in any contest over a will or in any proceedings to probate a

lost will to prove by oral declarations of the testator
the fact that a will was either made or revoked by him.
The declaration of a testator can in many instances be
introduced when a part of the *res gestae* or to show
either his mental condition or the state of his affections,
but can never be introduced to show and establish the
revocation of a will.    Hence, the errors complained of
in our "Assignments of Error" from 1 to 8 were com-
mitted by the lower court.    Gibson v. Gibson, 24 Mo.
227; Walton v. Kendricks, 122 Mo. 619; Gordon v. Bur-
ris, 141 Mo. 613; Schierbaum v. Schemme, 157 Mo. 1;
Throckmorton v. Holt, 180 U. S. 552; Thornton on Lost
Wills, sec. 66.    (2)   Where a testator dies, and no will
can be found among his assets, if it can be shown that
the last time the will was seen it was in the possession of
the testator, then there is a presumption that the testa-
tor himself destroyed the will with the intent to revoke
it, and some courts hold that it is proper to overcome
this presumption for contestants or proponents to prove
such declarations of the testator as would have a tend-
ency to show that testator did not destroy his will with
intent to revoke the same; and when such proof is made
then it is held the opposing side can introduce the decla-
rations of the testator, not to establish and prove the fact
that testator actually destroyed and revoked his will,
but to reinforce the presumption, as heretofore stated,
arising that the will was revoked.    Behrens v. Behrens,
47 Ohio St. 332; Collyer v. Collyer, 110 N. Y. 486.    (3)
The court erred in permitting Dr. Wainright to testify
to information obtained from conversations held by him
with the testatrix while he was treating her and while
she was his patient.    It is well known that limits are
placed by law on the right of a physician to testify to
conversations with his patient.    We think the facts
sworn to by Dr Wainright come within the statute.    R.
S. 1899, sec. 4659; Brackney v. Fogle, 156 Ind. 540;
Gurley v. Park, 135 Ind. 440.    (4)    The witness, Frank
Walsh, the attorney, should not have been permitted to

testify to conversations held with testatrix. She was his client, and the conversations he testified to were confidential. They occurred when he was being consulted about the matter they referred to. Under the statute Mr. Walsh could not testify, never having received permission of the testatrix to do so. I Wait's Ac. and Def., p. 468; Andrew's Adm'x v. Simms, 33 Ark. 774; Lorimer v. Lorimer, 124 Mich. 631; Greenleaf on Ev., sec. 243; Johnson v. Sullivan, 23 Mo.479; Sweet v.Owen, 109 Mo. 7; Alexander v. United States, 138 Fed. 358. (5) In instruction 7 the court declares it to be the law that a presumption exists that testatrix revoked the will, regardless of who last had the possession of the same. As to who last had possession of the will is by no means a settled and admitted issue. There is much doubt. By carefully considering the testimony of Mr. Moore, although it is sufficiently strong to justify the jury in finding that the will sought to be probated was among the papers handed to testatrix when she called for her will, yet he states that neither he nor testatrix looked at the papers to see if her will was among them. Again, if her will was among the papers and the testatrix kept it in her trunk, the question would be finally argued pro and con before the jury, to see who was actually in possession of the trunk at the time of testatrix's death. For the evidence shows that testatrix was in Mr. Crowe's room—the trunk was in there and the keys to the trunk were in Mr. Crowe's chiffonier. So the issue is fairly made in the record as to whether or not testatrix received the will from Mr. Moore, and if she did and kept same in her trunk, then the question was also one for the jury to decide as to who had possession of the trunk up to the time of the death of testatrix. 2 Greenleaf on Evidence, sec. 681; Lane v. Hill, 68 N. H., 283; Jarman on Wills (5 Am. Ed.), sec. 133; Snider v. Burks, 84 Ala. 58; Lillie v. Lillie, 3 Haggard's Rpts. 184.

*Henry N. Ess* and *Evans & Finley* for respondents.

(1) The burden rested upon plaintiff to prove affirmatively not only that Mrs. Johanna C. Hamilton executed a will in the manner provided by the statute, but, also, that such will was in existence unrevoked at the time of her death, before he ought to have been allowed to give evidence of its contents. Betts v. Jackson, 6 Wend. 194. (2) No will was proved to be in existence at the death of the testatrix, and even if the execution of a will was ever shown, the fact that it was not found at the death of testatrix, search having been made for it, raises the presumption that it was destroyed by the testatrix, *animo revocandi;* and this presumption is conclusive in the absence of testimony showing clearly that said last will was lost or was destroyed without the consent of the testatrix. Woerner's Law of Administration (2 Ed.), 95; Beaumont v. Keim, 50 Mo. 29; Betts v. Jackson, 6 Wend. 173; Collyer v. Collyer, 110 N. Y. 485; Shocklett v. Roller, 97 Va. 640; Estate of Lewis Heards, 140 Pa. St. 242; Stewart's Estate, 149 Pa. St. 111; Hatch v. Sigman, 1 Dem. 530; Hood v. Ashley, 88 Hun 103; Redfield on Wills (4 Ed.), p. 357; 1 Williams on Executors (6 Am. Ed.), 195; Knapp v. Knapp, 10 N. Y. 276; Schultz v. Schultz, 35 N. Y. 653; In re Kennedy, 167 N. Y. 168; Matter of Nichols, 40 Hun 387; Appling v. Eads' Administrators, 1 Gratt. 286; Mercer's Admrs. v. Estate Mackin, 77 Ky. 440; McDonald v. McDonald, 142 Ind. 81; In re Valentine's Will, 93 Wis. 55; Pickens v. Davis, 134 Mass. 252. (3) The testimony relating to the declarations of the testatrix, offered by the defendants, was admissible for the purpose of showing the mental condition of the testatrix, the state of her affection for plaintiff, and her satisfaction or dissatisfaction with him, and in contradiction of similar testimony offered by plaintiff. Gibson v. Gibson, 24 Mo. 228; Cawthorn v. Haynes, 24 Mo. 236; Rule v. Maupin, 84 Mo. 589; Thompson v. Ish, 99 Mo. 170; Jones v. Roberts, 37 Mo. App. 182; Harring v. Allen, 25 Mich. 506; McDonald v. McDonald, 142 Ind. 81;

Blackburn v. Crawford, 3 Wall. 192; Pickens v. Davis, 134 Mass. 254; Williams on Executors (6 Ed.), p. 414 (n); Glover v. Patten, 165 U. S. 406. (4) The declarations made by Mrs. Hamilton, that she had burned her will, were admissible in evidence as supporting the presumption of revocation arising from the fact that the will was last seen in her possession and under her control, and was not found among her papers at her death. 1 Underhill on Wills, pp. 317-18, sec. 232; Patterson v. Hickey, 32 Ga. 159; Weeks v. McBeth, 14 Ala. 475; Newell Beauchamp's Wills, 4 Mon. (Ky.) 362; Collagan v. Burnes, 57 Me. 449; Behrens v. Behrens, 47 Ohio St. 323; Reel v. Reel, Hawks. (N. C.) 267; Smiley v. Gambill, 2 Head (Tenn.) 164; Lawyer v. Smith, 8 Mich. 411; s. c., Am. Dec. 460; Betts v. Jackson, 6 Wend. 173. (5) Where the verdict is for the right party, even though improper testimony may have been admitted, or improper instructions given, the judgment will not be disturbed. Burkholder v. Henderson, 78 Mo. App. 296; Earney v. Modern Woodmen, 79 Mo. App. 385; Baustian v. Young, 152 Mo. 317; Barkley v. Barkley Cemetery Assn., 153 Mo. 318; Sherwood v. Railroad, 132 Mo. 339; Lewis v. Oesterreicher, 47 Mo. App. 79.

GANTT, P. J.—This is a suit by plaintiff to establish a will which he alleges was made by Mrs. Johanna C. Hamilton and by which she devised and bequeathed to him all of her property subject only to the payment of her just debts. The petition alleges the will was executed about May 15, 1896, and a copy thereof is annexed to the petition.

The defendants are the heirs at law of Mrs. Johanna Hamilton, deceased.

It is alleged that Mrs. Hamilton died in Kansas City, Missouri, on the 27th day of November, 1897, testate; that an attempt to probate the alleged copy of her last will was made in the probate court and was by that court rejected; that said last will was made in writ-

ing and duly signed by said Johanna and attested in due form by two subscribing witnesses in her presence; that it was not altered, added to or changed or revoked by her or any one for her, but was in full force at the time of her death. That at the time of its execution she was single and unmarried; that she gave birth to no issue after making it, and remained unmarried until her death; that she was the owner of property of the value of $15,000; that defendants are her next of kin and heirs at law; that plaintiff believes there are other heirs besides defendants, but he is unable to state their names or relationship. "Your petitioner further states that after the execution of the said will it was retained by the said Mrs. Hamilton among her papers and after her death could not be found; that diligent search has been made therefor where the same was likely to be; that said will has been lost or destroyed," wherefore petitioner asks that said will so made may be proven and adjudged the last will of said testatrix, and for other and further relief.

Defendants admit Mrs. Hamilton died November 27, 1897, in Jackson county, but deny the execution of such will as is alleged by plaintiff on May 15, 1896, Whether she executed any last will they have no knowledge or information sufficient to form a belief, but state that if she made a will she destroyed it in her lifetime— that no will was found among her papers after her death. Defendants prayed the petition might be dismissed. The administrator, Thomas J. Seehorn, filed a general denial.

Thomas J. Hamilton, the plaintiff, was married to Johanna C. Hamilton, nee Johanna Crowe, July 14, 1864, at Cairo, Illinois. They moved to Kansas City from Mound City, Illinois, in May, 1868. They lived together as man and wife until December 4, 1884, when plaintiff deserted her and went to California where he resided until 1894. On October 2, 1886, Mrs. Hamilton was granted a divorce from plaintiff by the circuit court

of Jackson county, on the ground of desertion, and about one year later the plaintiff married another woman in California. At or about the time of the divorce he and Mrs. Johanna Hamilton agreed upon a division of their property and he deeded her her portion, consisting principally of real estate in Kansas City on Wyandotte street. In 1894 plaintiff came back to Kansas City to reside, and with his second wife lived there until the death of Mrs. Johanna Hamilton. Thomas J. Hamilton and Johanna had no children born to them, but plaintiff had one son by his second wife.

The evidence establishes that after her divorce and about the year 1889, Mrs. Johanna Hamilton made a will devising her estate to plaintiff for life, remainder to son by his second wife. This son died April 25, 1896, and sometime in the following May, Mrs. Hamilton executed another will. This will was drawn by Mr. Boggess of the firm of Boggess & Moore and was attested by Mr. Boggess and John T. Sullivan. This will was left in the custody of Mr. Boggess. At the time of the execution of this will Mrs. Hamilton was partially paralyzed, and plaintiff went to her rooms, where she was boarding.

From his evidence, we learn that she suggested that now that his son was dead she wanted to give plaintiff all of her property and wanted the will changed. Of course defendants objected, and properly so, to this evidence, as it had not been established that any will had been executed, or if it had been, was unrevoked at her death. Any way the evidence was heard with a promise to connect.

Plaintiff then went to Mr. Boggess's office and took him out to see Mrs. Hamilton. Mr. Boggess had been plaintiff's attorney in his divorce case with Mrs. Hamilton. Mr. Boggess became ill and was confined to his home for a long time prior to his death, in August, 1896.

Sometime that summer Mrs. Hamilton called at the

office of Boggess & Moore and saw Col. Milton Moore, one of the firm, and told him she desired to get her will. Col. Moore spoke to Mr. Boggess about it, and at his direction, Col. Moore gave Mrs. Hamilton a bundle of papers indorsed with her name, and she said that was what she wanted. Col. Moore did not open the package and could not state positively the will was in it. However, the other evidence tends to establish an almost conclusive inference that her will was at that time handed to Mrs. Hamilton by Col. Moore.

Prior to this, the plaintiff had called for these papers, but Col. Moore declined to give them to him. Mrs. Hamilton some days later called and asked for her will and when he gave her the bundle said that was what she wanted.

William Miller, another witness for plaintiff, testified that he visited Mrs. Johanna Hamilton at her room in the Burlington Hotel, and during his conversation with her, she inquired about Hamilton, the plaintiff, and witness said to her: " 'I hope you have not forgotten Mr. Hamilton,' and she replied, 'No, indeed. If you think I have you just raise that trunk lid,' which I did. 'Now, you will find a document in such and such a corner.' I looked at the place and found it, and I took it out and looked it over. It looked very much like a *will* to me. Very soon I saw it was in behalf of Mr. Hamilton (the plaintiff.) I says, 'I guess it is all right.' She said, 'It certainly is.' I laid it back in her trunk. I saw Mr. T. J. Hamilton's signature there, and also other witnesses'."

After her death in November, Mr. Seehorn, the public administrator, took charge of her estate and her trunk and papers, but could find no will.

Prior to her death, Mrs. Hamilton was taken to the residence or suite of rooms occupied by one of her nephews, Mr. Crowe, and his wife, and lived with them until her death.

The testimony developed that on the day the will was drawn by Mr. Boggess, Hamilton, the plaintiff, read it, and after that day the evidence does not show any other visit by plaintiff to Mrs. Hamilton and he told her brother that "he had not seen her for a long time up to her death."

There was a great mass of evidence by plaintiff tending to show that Mrs. Hamilton had a purpose to make plaintiff her devisee.

In rebuttal of this there was also much evidence tending to show an opposite state of mind and affection, and that she entertained a feeling of bitterness at having been deserted and abandoned by plaintiff, and a fixed purpose that his second wife should not get her property.

There was a material difference between the will propounded and the will which Hamilton, the plaintiff, describes in his evidence.

The finding was against the plaintiff, and judgment accordingly.

Plaintiff appeals.

Many errors are assigned, chiefly in the admission and rejection of evidence, and giving of instructions.

I.    The first error asserted is in permitting Dr. Horrigan to testify to conversations had with testatrix about wanting to make a will and getting an attorney to draft it.    This witness was called by plaintiff himself.    He testified he had been her physician from 1892 until possibly two months before her death, when she employed another physician.    He saw her afterwards at a hotel at Fifteenth and Campbell streets, but not as her physician.    Asked by plaintiff if he talked with her, he answered that, "She sent for me.    She said she was very low and had been persuaded another physician would do her more good; that she wished to consult me about a matter of business foreign to my profession. She asked me to tell her, as her friend, whether I thought

she was going to die, and I told her I thought she would, in three weeks. This was in October, 1897. She then said she wanted to make a will.

"Question. Did she say anything about her feeling for or against Mr. Hamilton? Answer. Well, she said that—she thought that—there was nobody particularly that she cared for but Mr. Hamilton. When she spoke of the will she said she wanted to leave it to certain charities, the church, the Little Sisters of the Poor, the German Hospital."

Thereupon upon cross-examination the witness was asked to relate the remainder of the conversation with deceased. Objection was made that it was incompetent to admit oral testimony either as to the making or the revocation of a will. The court then permitted witness to tell the remainder of the conversation.

"She asked if I knew a lawyer who could make a will that could not be broken, and I told her, yes. I took Frank Walsh out there the next day. He wrote down notes of the disposition she desired to make."

Some four days later witness saw her again, and she told him she had changed her mind about making a new will; that she was going to let matters stand as they were; that they would fight over it and she would let them finish it after she was gone.

It is obvious that this witness was not testifying to any information which he acquired as a physician from the patient. He was not consulted as a physician, and the information was not necessary to enable him to prescribe for her as such.

The assignment otherwise is so general that we are at a loss to understand on what ground error is assigned. If it be as we surmise it is, that the evidence was incompetent for the purpose of showing a revocation, it is obvious that it was a part and parcel of the same conversation by plaintiff and tended to show the state of her affections as much as her examination in chief did. There was no error in admitting it. It certainly re-

butted the theory of plaintiff of her fixed intention to give it to her divorced husband.

II.　The second assignment is so general that it presents no question of error for our review. To merely say that the court erred in permitting a witness to testify to a conversation and then refer this court to evidence covering pages of testimony, is no assignment at all, and will not be considered by this court.

III.　The same disposition must be made of assignments 3, 4 and 5. As said by Judge Thompson, in Schultz v. Moon, 33 Mo. App. 329, ''the appellant can not send the court on a search through the record for supposed errors by such a general and sweeping assignment.'' It is the duty of the appellant to point out in this court specifically the errors of which he complains.

IV.　The same must also be said of the sixth assignment of error. No legal ground of error is stated under this point, but an inspection of the record shows that all of the objections to Dr. Wainright's testifying were sustained at first, and that finally he was permitted to state merely that he asked her if she had made a will and she said she had not. No specific objection was made to this evidence, and it is clear it was not information obtained by him from her to enable him to prescribe for her. It was entirely outside of his professional duty or employment.

V.　In the eighth assignment it is said, ''The court erred in refusing to give questions numbered 1, 2 and 3, and instructions numbered 1, 2, 3 and 4 asked by plaintiff.'' It goes without saying that the first portion of this assignment is absolutely unintelligible. We have no idea what it relates to. As to the instructions mentioned, the objections are not followed up in the brief of counsel and as they have not deemed them important enough to point out wherein the error occurred, we shall not delve into them to find error.

VI.　Counsel do insist that error was committed

in the seventh instruction given by the court as follows:

"7. If the jury believe from the evidence that there was not found among Johanna C. Hamilton's papers and effects, at or after her death, any will in writing made by her after search therefor had been made for the purpose of ascertaining whether or not she left a will, then the law presumes that she had revoked any will she might have made, and the burden of proof is upon the plaintiff to overcome such presumption by the greater weight of the credible evidence in the case; and unless he has done so, your verdict will be for defendants."

As to this instruction counsel say:

"It is declared to be the law that where a testator dies, and no will can be found among his effects, if it can be shown that the last time the will was seen it was in the possession of the testator, then there is a presumption that the testator himself destroyed the will with the intent to revoke it, and some courts hold that it is proper to overcome this presumption for contestants or proponents to prove such declarations of the testator as would have a tendency to show that testator did not destroy his will with intent to revoke the same, and when such proof is made, then it is held the opposing side can introduce the declarations of the testator, not to establish and prove the fact that testator actually destroyed and revoked his will, but to reinforce the presumption as heretofore stated arising that the will was revoked." [Behrens v. Behrens, 47 Ohio St. 332; Collyer v. Collyer, 110 N. Y. 486.]

In view of this statement of the law, counsel for plaintiff assigns as error the omission of the court to require the jury by this seventh instruction to find that the will when last seen was in the possession of the testatrix.

Section 8871, Revised Statutes 1889, in force when the will was in contest was made, provides: "No will

in writing, except in the cases hereinafter mentioned, nor any part thereof, shall be revoked, except by a subsequent will, in writing, or by burning, cancelling, tearing or obliterating the same, by the testator, or in his presence, and by his counsel and direction.''

And this, in substance, is the law of England. [29 Chas. II. 1676.]

Conceding as there was evidence sufficient to establish that Mrs. Johanna Hamilton did in May, 1896, execute her will in writing, and that it was duly attested by two witnesses, and that in substance she gave her former husband, the plaintiff, all her property, and that such will could only be revoked in the manner provided by the above quoted statute, still we are confronted with the proposition that if the evidence shows that after its execution and attestation this will was retained by Mrs. Hamilton in her own possession and after her death it could not be found among her papers or elsewhere, the presumption is that she revoked it by destroying it *animo revocandi,* and this presumption stands in place of positive proof. This was well settled at common law. [Beaumont v. Keim, 50 Mo. 29; Betts v. Jackson, 6 Wend. 173; Woerner's Law of Administration (2 Ed.), 91-95; Knapp v. Knapp, 10 N. Y. 276; Loxley v. Jackson, 3 Phill. 126; Shacklett v. Roller, 97 Va. 639; Stewart's Estate, 149 Pa. St. 114; McDonald v. McDonald, 142 Ind. loc. cit. 82; In re Valentine's Will, 93 Wis. 45-6.]

While this is the presumption it is a rebuttable one, and courts receive evidence of declarations of the testator having a tendency to show that if he did destroy his will he did so without intent to revoke it, as by accident or mistake, and declarations *per contra,* to reinforce the view that he did so with intent to revoke, and to show the state of his mind or affections, but not to establish by oral evidence merely that he had revoked his will. [Rule v. Maupin, 84 Mo. 589; Thompson v. Ish, 99 Mo. 170.]

Now in view of these established principles, let us examine the objection to this seventh instruction. And, first, we may remark that the propriety or impropriety of an instruction depends upon the state of the evidence and pleadings.

Conceding, then, that the rule fully stated requires the will to be traced to and in the possession of the testatrix after its due execution and not shown to have been out of her possession subsequently and prior to her death, in this case the plaintiff had alleged in his petition "that after the execution of the said will it was retained by the said Mrs. Hamilton among her papers and after her death could not be found." This allegation was binding on plaintiff as a solemn admission of record, but it was reinforced by the evidence of Miller, for whom he stood sponsor, that in the last illness of Mrs. Hamilton he saw it in her room in her trunk, which was under her control. There was no evidence that she afterwards entrusted it to any person. Thus the pleadings and evidence established a will duly executed; the possession of it by testatrix from the time Col. Moore turned it over to her until a few weeks or days prior to her death; and that after her death it could not be found by diligent search. There was no evidence contradicting these facts. They were practically admitted. When, then, the court instructed that, if the will could not be found, the law presumed she had revoked it, how could it possibly mislead the jury? We think the instruction in the state of the pleadings and evidence was not erroneous, especially since plaintiff did not ask any instruction requiring the jury to find that it was not in her possession.

VII. Having disposed of these propositions it remains only to notice the admission of the evidence of Mr. Walsh. While we think it was incompetent because it was declarations made by Mrs. Hamilton to Mr. Walsh in his professional character, about a matter which was in the legitimate scope of professional em-

ployment, it was admitted solely for the purpose of rebutting the evidence offered by plaintiff to show that Mrs. Hamilton had not destroyed the will with the intention of revoking it, and without this evidence the finding must have been for defendants. It related to the making of a new will which she never executed, and was offered merely to show the state of mind and affections of Mrs. Hamilton at the time. It was merely cumulative to a great mass of like evidence, and in our opinion did not and could not produce a different verdict.

On the contrary, we think that at the close of plaintiff's evidence, under the state of the pleadings, the jury should have been instructed to find for defendant and nothing that defendants offered strengthened plaintiff's case.

While error is presumptively harmful, we are forbidden to reverse a case for error unless in our opinion "it affects the substantial rights of the adverse party."

The evidence nowhere rebutted the presumption that the testatrix had destroyed the will *animo revocandi*. That burden the law placed upon plaintiff and he did not sustain it, and the verdict was for the right party.

The judgment is affirmed. All concur.