## WILLIAM L. BLACK v. METROPOLITAN STREET RAILWAY COMPANY, Appellant.

### Division One, March 31, 1909.

1. **NEGLIGENCE: Electric Shock: Circuit: Instruction: No Evidence.** The instruction told the jury that if plaintiff attempted to walk from the rear vestibule of the street car into the body or inclosed part thereof, "and that while doing so he stepped upon said metallic cover of said sand receptacle and upon the metallic sill of the door connecting the vestibule with the body of said car and received from said metallic cover of said sand receptacle and said metallic sill of said door or either of them an electric shock and was thereby injured, then your verdict should be for plaintiff." *Held,* that evidence that plaintiff received one shock while he was standing with his right foot upon the floor of the vestibule and with his left foot upon the metallic cover of the sand receptacle, and that the electricity glued his left foot there and with great effort he forced it therefrom, and that he received the second shock when passing from the vestibule to the interior of the car when he stepped with his right foot upon the metallic sill of the door, did not support the instruction. The first part of the instruction is drawn upon the theory that by placing one foot upon the metallic cover of the sand receptacle and the other upon the metallic door sill his body completed the electric circuit between the cover and the sill, and thereby the injury was caused.

2. ———: ———: ———: ———: **Departure.** The second part of said instruction was a departure from the petition, which charged that plaintiff "stepped one foot upon said metallic cover of said sand receptacle and the other upon the metallic part of the sill of the door, and immediately received a powerful electric shock," for the petition thereby charged that the electric circuit was completed by plaintiff's putting one foot upon the cover and the other upon the sill, and the instruction authorized a recovery if he was standing upon only one of them.

3. **EXCESSIVE VERDICT: Simulated Injuries.** Where plaintiff's evidence, if true, shows his injuries were severe and serious, a verdict for $8,500 will not be disturbed; but if he was simulating, he was not entitled to anything.

   *Held*, by GRAVES, J., that the verdict is grossly excessive, and the cause should be remanded for new trial.

4. **NEGLIGENCE: Passenger: Specific Acts: Instruction.** *Held*, by GRAVES, J., in a separate concurring opinion, that plaintiff, being a passenger, was under no necessity of alleging in detail the exact manner in which he was hurt, for the doctrine of *res ipsa loquitur* applies; but having alleged certain specific negligence, he can prove no other, and the instruction was broader than the petition, and so were the facts, but no leave having been taken to amend the petition in accordance with the facts, he is bound by the issues he made, and a new trial should be awarded.

Appeal from Jackson Circuit Court.—*Hon. Jas. H. Slover,* Judge.

REVERSED AND REMANDED.

*John H. Lucas, F. G. Johnson* and *C. S. Palmer* for appellant.

(1)   The court erred in giving plaintiff's instruction 1.  Gerren v. Railroad, 60 Mo. 405; Choteau v. Searcy, 8 Mo. 733; Hutchinson v. Realty Co., 88 Mo. App. 614; Williams v. Railroad, 96 Mo. 275.  (2)   The verdict was excessive.  Bragg v. Railroad, 192 Mo. 331; Derry v. Railroad, 192 Mo. 197; Railroad v. Finlayson, 16 Neb. 578; Railroad v. Syfan, 43 S. W. 551, affirmed 91 Tex. 562; Fordyce v. Moore, 22 S. W. 235; Taylor v. Railroad, 103 Wis. 27; Ewing v. Railroad, 147 Pa. St. 40; Phillips v. Dickerson, 85 Ill. 11; Mitchell v. Railroad, 151 N. Y. 107; Reed v. Ford, 112 S. W. 600.

*Reed, Yates, Mastin & Howell* for respondent.

(1)   An instruction which submits a matter of fact or evidence to the jury, but which makes no comment as to its weight or effect, is not erroneous. And though

it is the duty of the court to decide whether there is
any evidence in support of a particular fact, yet, where
there is any evidence, however slight, to support plain-
tiff's cause of action, it is the province of the jury to
determine the sufficiency of it. But the evidence in this
case was overwhelming for the plaintiff, and practi-
cally uncontroverted by defendant. Hazell v. Bank,
95 Mo. 60; Ryan v. McCully, 123 Mo. 636; Rowen v.
Railroad, 82 Mo. App. 24; Reno v. St. Joseph, 169 Mo.
642; Reed v. Kibbler, 91 Mo. App. 361; Ladd v. Willi-
ams, 104 Mo. App. 79; Beattie v. Hill, 60 Mo. 72; Kelly
v. Railroad, 70 Mo. 604; Obouchon v. Boon, 10 Mo. 442;
Clotworthy v. Railroad, 80 Mo. 223; Hays v. Bell, 16
Mo. 496; Yates v. Brackenridge, 27 Mo. 531; Glasgow
v. Copeland, 8 Mo. 268; Rippy v. Friede, 26 Mo. 523;
Emerson v. Sturgeon, 18 Mo. 170. (2) But in this
case all the evidence, both plaintiff's and defendant's,
proved the substantial issue as contained in the peti-
tion and instruction 1. If defendant objected to the
theory of plaintiff's knowledge of the defect in its ap-
pliances, defendant should have offered an instruction
of its own and included in it the theories of the defects
in accordance with its evidence. Hester v. Packing Co.,
84 Mo. App. 451; Cohn v. Reid, 18 Mo. App. 115; Moore
v. Railroad, 73 Mo. 438. (3) The instructions given
were very favorable to defendant; plaintiff was a
passenger and defendant was required to exercise only
ordinary care by the instructions. Devoy v. Railroad,
192 Mo. 197. (4) The verdict was not excessive.
Devoy v. Railroad, supra; Reynolds v. Railroad, 189
Mo. 408; Markey v. Railroad, 185 Mo. 348. (5) The
courts do not favor subtile distinctions and niceties of
logical sequence, but favor rather the substance. Pet-
erson v. Railroad, 211 Mo. 519.

WOODSON, J.—The plaintiff brought this suit
against the defendant in the circuit court of Jackson
county to recover damages for injuries alleged to have

been received by him through the negligence of defendant, by a shock caused by an electric current passing through his body while a passenger upon one of defendant's cars. A trial was had and a judgment was rendered in favor of plaintiff for the sum of $8,500. After taking the proper preliminary steps, the defendant duly appealed the cause to this court.

In substance the petition alleges that on the car in question there was a sand box below the platform of the car upon which there was a metallic cover which was set in the floor of the platform so as to become a part thereof. The petition alleges that defendant negligently permitted the electrical apparatus and equipment of the car to become and remain defective and, in another paragraph, negligently managed and operated the electrical apparatus and equipment "in such manner that the aforesaid metallic cover to said sand receptacle and other metallic parts of the rear end of said car became charged with electricity and thereby became dangerous and unsafe and liable to injure passengers standing upon or passing over same." Plaintiff alleged his inability to more accurately describe the negligent condition and operation of the car. He then sets out the manner of receiving his alleged injury: "That on the date hereinbefore mentioned, while plaintiff was a lawful passenger upon said car and while said car was at or near the intersection of Nineteenth Street with Main Street, he attempted to walk from the rear vestibule of said car into the body or enclosed part of said car and in doing so he stepped one foot upon said metallic cover of said sand receptacle and the other upon the metallic part of the sill of the door connecting the said vestibule with the enclosed part of said car. That immediately he received a powerful electric shock, the electric current passing through his body and injuring him as follows," etc.

The answer was a general denial.

The plaintiff was the only witness who described the manner in which he claims to have received the shock; and his testimony in that regard is as follows:

"Q. Now just tell the jury what happened to you, if anything, when you got on that car? A. Well, I stepped on the steps of the platform—that is, the lower step, leading to the platform, and as I stepped on there they started the car and of course I caught the door sill and that brought me around and I brought my left foot down on this metal plate on the platform. Q. What metal plate is that, Mr. Black? A. That is the sand receptacle, and there is a metal plate on top of it, some four to six inches across the top, to the right of the door as you go in. Q. Suppose you are going to the door this way now (showing)—about how close to the back end of the car is this metal plate? A. I judge about six inches—something like that. Q. And is it on a level with the floor? A. Yes, sir; it makes a part of the floor. Q. When the car started and you swung around on there, what did you have hold of with your hand? A. When I first took hold I had hold of the hand-railing. Q. The metallic hand rail on the back end of the car? A. Yes, sir; when it started and I went to step up. Q. Now, did you have hold of that with your hand at the time your foot stepped on this sand plate? A. I had hold of the door post. Q. Now, what happened to you, if anything, when you stepped on this metal cover? A. I had a sensation that was something continuing and went up my whole body, clear up into my head, and that brought me up into a rigid condition—made me perfectly rigid for a minute—I don't know just how long. Q. What was the sensation? A. Just like driving nails through my flesh. Q. What part of your flesh? A. All over my body and down the legs. Q. How about the state of your muscles? A. It made me perfectly stiff—set the muscles, as if they were firm. Q. What effect did it have on your hands, where you had them grasped

to the door? A. It set the muscles—brought them around rigid—perfectly tight for an instant. Q. Tell the jury whether this sensation was very painful or not? A. It was, yes, sir, very painful. Q. Now, how did you get off of this box cover? A. With my left foot—that is the one that I placed on the sand box cover—I went to make a step after I came to, I was kind of dazed at the time, and when I went to raise my foot it was stuck to this place, and in order to do that, to get off that plate—in order to move—I had to put my hand like this (showing) and bring my foot up that way off the plate; it popped like clapping hands together, when I dragged my foot from the metal to the platform; that was the first I got straightened up from that—and made a step with my right foot to the door-sill. It is metal also, and I received another that didn't seem to be so strong as the other one—I didn't feel it so strong—it may have been but I didn't feel it so strong. Q. What effect did that have upon your hands and muscles—this second shock? A. I don't remember that. Q. Was there any difference between the sensation of the first one and the other except that the second one wasn't quite so severe? A. I don't think there was. Q. Otherwise it was the same kind of sensation? A. Yes, sir. Q. Where was the conductor at the time you got on—the conductor of this car? A. I couldn't tell you what position he was in—he was there at the rear of the car though—whether he was in the vestibule or inside the door now, I couldn't say—I don't remember now, but he was in the car. Q. There at the end of the car? A. Yes, he was at the rear end of the car. Q. Did he warn you or say anything to you when you started to get on the car, to look for this place? A. No, sir, he did not. Q. What kind of a day was it, with reference to whether or not it was thawing? A. It was thawing—a clear day. There had been a heavy snow and the water had run down there and I had to wade through water, half a

shoe-top, to get to the car. Q. After you got on there your feet were wet? A. Yes, sir. Q. You mean just before you got on the street car? A. Yes, sir—just before I got on the car I stood on the sidewalk until the car came north, coming, and turned and stopped the car, so that I had to wade through this water in order to get on this car. . . . Q. What do you mean by that? A. It put these muscles in a strain so it would keep them from jerking—I could hold them up like that and it kept them from jerking, the same sensation I have to-day, only it isn't so strong now as then. Q. Do you remember of getting a shock on the platform before you put your foot up on the door plate? A. I got it on the platform, on the sand box, yes, sir. Q. That is what I want to understand—before you had stepped up on to the door plate you had gotten the shock? A. Yes, sir. Q. There is a little step up from the platform—a step something like this—four or five inches? A. Yes, sir. Q. There is something of an offset—that is, the platform and vestibule is lower than the front end of the car? A. I think so, yes, sir, as near as my memory serves me I think it is. Q. Now, which foot do you say you stepped on to the sand box cover with? A. My left foot. Q. And where was your right foot at that time? A. I couldn't tell you where it was—it was coming along there somewhere. Q. You feel certain that at the time when you got your left foot on the sand cover you got a shock, before you got your right foot off of the platform up on to the door sill? A. I know I got a shock before I got on to the door sill with my right foot. Q. You are positive of that? A. Yes, sir; I am positive of that. Q. And you got what you call a very severe shock there? A. Yes, sir. Q. Much more severe as it impressed you than the shock that you got when you put your other foot on the door sill? A. Yes, sir. Q. Was it your right foot you put on the door sill? A. Yes, sir. Q. You do think after you put your

right foot on the door sill that you got another shock? A. Yes. I know I did. Q. And then you went on into the car? A. Yes, sir. Q. Now, when was it that you had the trouble in getting your foot loose from the sand cover—was it before you stepped onto the door sill? A. Yes, sir. Q. While you were wholly in the vestibule—that is the time you had to take hold of your leg with your hands? A. With my one hand. Q. And how did you manage to get loose, did you say? A. I will show you—I went to step—raise this foot up—and it was stuck to this cover. Q. Which foot? A. Left foot. Q. Your left foot was stuck tight to the cover? A. Yes, sir; it was stuck tight, and I put my hand on my knee, like that (showing). Q. You sort of pried it loose? A. Yes, that is just what I done. Q. How long did it take you to do that? A. That I am unable to say. Q. Did you have to stoop to do it? A. That is something I couldn't state —I didn't make any note of it. Q. You say you did that with your right hand—where was the other hand? A. I suppose I had hold of the door post, or something any way. Q. You don't remember just how you had it? A. No, sir. Q. And you had to take hold of your knee there? A. Yes, sir. Q. And turned it to get it loose? A. Yes, sir. Q. And then after you got your foot loose, where did you put your left foot then? A. On the platform of the vestibule somewhere I suppose. Q. You took it off the sand box cover? A. I did—yes, sir. Q. And then after taking it off of the sand plate cover you put your right foot up onto the door plate? A. Yes, sir. Q. And then it was that you got the second shock? A. Yes, sir. Q. Now, that first shock that you got you have described several times as being the sensation of twenty-penny nails being driven into your flesh. A. That is about as near as I could express it. Q. That is the nearest you could give in order to give to the jury the feeling that you had? A. Yes, sir. Q. It felt

like twenty-penny nails were being driven into your flesh, all over? A. As near as I could tell, it felt like twenty-penny nails were driven in my body. Q. Did this sensation like nails being driven into your body— is that confined to the calves of your legs? A. Yes, it was in my legs, and my whole body, for an instant there—it shot right into me. Q. Over your whole body? A. Yes, sir. Q. Up your arms as much as in your legs? A. I don't know that I felt it so much in my arms as I did in my legs. Q. But you felt it up in your body? A. Yes, sir. Q. And you felt it up in your head? A. I don't know that it felt like nails in my head."

Plaintiff also introduced testimony tending to prove the character and extent of his injuries; and the defendant's testimony tended to show that neither the car nor the electrical appliances thereof were defective or out of repair; and that he was simulating, and had, in fact, received no injury whatever.

At the request of and on behalf of plaintiff the court gave the following instruction:

"1. The court instructs the jury that if they believe and find from the evidence that on or about the 18th day of January, 1905, the plaintiff was a passenger on one of defendant's electric cars running over and along East Nineteenth street in Kansas City, Missouri, and that defendant carelessly and negligently permitted the electrical apparatus and equipment of said car to become and remain defective and out of repair in such manner that a metallic cover on a sand receptacle and other metallic parts of the rear end of said car became heavily charged with electricity and thereby became dangerous and unsafe and liable to injure passengers standing upon or passing over the same, and that defendant knew or by the exercise of ordinary care and caution could have known of the dangerous and defective condition of said car, if any, in time to have repaired same before the happening

of the injuries complained of, if any, or by the exercise of ordinary care and caution could have warned plaintiff of the dangerous and defective condition thereof, if any, in time by the exercise of ordinary care to have prevented said injuries, but that defendant carelessly and negligently failed so to do, and that on said date while plaintiff was a passenger upon said car, he attempted to walk from the rear vestibule of said car into the body or inclosed part thereof, and that while doing so *he stepped upon said metallic cover of said sand receptacle and upon the metallic sill of the door connecting the said vestibule with the body of said car and received from said metallic cover of said sand receptacle and said metallic sill of said door or either of them an electric shock,* and was thereby injured, then your verdict should be for the plaintiff. And by ordinary care is meant such care as an ordinarily prudent and careful person would usually exercise under the same or similar circumstances.''

To the giving of which the defendant duly objected and saved its exceptions.

I. Counsel for appellant presents two objections to instruction numbered 1 given by the court on behalf of the respondent. It is first insisted there was no evidence introduced upon which to base a part of that instruction, and that another part thereof submitted to the jury an issue not made by the pleadings.

We will consider these two propositions in the order stated.

The objections are leveled at that part of the instruction italicized; and it is insisted that there was no evidence upon which to base the first part thereof, which told the jury that if they believed ''that while doing so he [the respondent] stepped upon said metallic cover of said sand receptacle and upon the metallic sill of the door connecting the said vestibule

with the body of said car and received from said metallic cover of said receptacle and said metallic sill of said door," then they would find for plaintiff.

In our judgment that objection is well taken; there is no evidence disclosed by this record bearing upon that question, except the testimony of respondent himself; and he testified that he received two shocks—one while he was standing with his right foot upon the floor of the vestibule of the car, and with the left foot upon the metallic cover of the sand receptacle, and that the current of electricity glued or fastened him firmly to said cover and that with the greatest of effort on his part he finally freed himself therefrom; and that he received the second shock when passing from the vestibule to the interior of the car, when he stepped with his right foot upon the metallic sill of the car door. Clearly this testimony did not support that part of the instruction indicated, for the reason that the instruction was drawn upon the theory that by placing one foot upon the cover of the sand receptacle and the other upon the metallic door sill his body completed the circuit between the cover and the sill which caused his injury. The instruction was drawn in that manner in order to conform to the allegations of the petition; and it was incumbent upon him to prove that fact before he was entitled to a recovery, but he totally failed to do so.

A second objection is lodged against this instruction because it authorized the jury to find for the respondent, provided they believed from the evidence that he stepped upon either the metallic cover of the sand receptacle or upon the metallic door sill, and that in consequence thereof he received the shock and injury complained of.

In order to clearly comprehend this objection we must bear in mind the issues presented by the pleadings.

The charge of negligence contained in the petition is that the appellant negligently permitted the electrical apparatus of the car to become and remain in a defective and dangerous condition, and that in consequence thereof the metallic cover of the sand receptacle and the other metallic parts of the rear end of the car became heavily charged with electricity, and thereby rendered dangerous and unsafe for passengers upon entering the same; and that while he was attempting "to walk from the rear vestibule of said car into the body or inclosed part of said car, and in doing so he stepped one foot upon said metallic cover of said sand receptacle and the other upon the metallic part of the sill of the door connecting the said vestibule with the closed part of said car. That immediately thereafter he received a powerful electric shock, the electric current passing through his body and injuring him as follows," etc.

In pleading specific negligence it was necessary to make that allegation, for the reason that before respondent could have received an electrical shock of any kind, it was necessary that some portion of his body should have constituted a portion of the circuit connecting the positive and negative poles; and when he made that charge in the petition he thereby notified appellant that it must appear in court prepared to meet and defend that charge, and none other. [Beave v. Railroad, 212 Mo. l. c. 352, 353.]

But after respondent introduced his testimony, which completely failed to sustain that charge of the petition, as before shown, his counsel drew this instruction on dual theories; the first along the lines of the petition, to sustain which there was no evidence introduced, and the other upon the theory that if the jury believed he stepped upon either the metallic sand cover or upon the metallic door sill, they would find for him.

Clearly that was a complete departure from the allegation of the petition. The petition stated that the circuit was completed by his placing one foot upon the cover and the other upon the sill, and that in consequence thereof he sustained the injury complained of; while this instruction authorized the jury to find for him if they believed he was standing upon only one of them. That changed the whole cause of action, and submitted to the jury a cause not stated in the petition. If respondent was injured while standing with his feet upon only one of those objects, the cover or the sill, then common knowledge tells us that some other portion of his body must of necessity have come in contact with some other negative or positive object, as the case might be, in order to have completed the circuit, before he could have received the shock complained of, and neither that object nor circuit was stated in the petition, and was not known to any one, so far as is disclosed by this record. Appellant was not called upon to meet or disprove such case, but was only required to answer and disprove the cause stated in the petition, which it did completely; and it was that fact which gave rise to and necessitated the asking of this instruction in this dual form.

We are clearly of the opinion that the instruction is erroneous in both particulars indicated and pointed out.

II. The next insistence of counsel for appellant regards the amount of the verdict which was for the sum of $8,500.

If respondent was injured in the manner claimed by him, and his condition as described by his witnesses was the result of that injury, then we would not feel justified in holding that the verdict of the jury was excessive for the reason his evidence tended to show that his injuries were severe and serious; but, if upon the other hand, he was simulating, of which there was

much convincing evidence introduced, then he was not entitled to recover any sum whatever. Those matters, however, can be watched and guarded against on the next trial.

The judgment is reversed and the cause remanded for a new trial.

All concur; *Graves, J.,* in separate opinion; *Lamm, J.,* in result. '

## SEPARATE CONCURRING OPINION.

GRAVES, J.—I concur in the result reached by my brother Woodson in this cause but not in all the reasoning and language used.

I.  I think instruction numbered 1 for the plaintiff is broader than the allegations of the petition, and in that is erroneous.  However broad a scope the evidence in a case may take, and however proper an instruction would be (considered from the standpoint of the evidence introduced) as to having sufficient evidence to support it, yet if such instruction goes beyond the purview of the pleadings, it is nevertheless erroneous.  In other words, a correct and proper instruction must be (1) an instruction based upon and authorized by the evidence, and (2) an instruction in no wise going beyond the purview of the pleadings.  If in the trial of a cause the court permits the evidence to assume a broader scope than indicated by the petition, such does not authorize an instruction broader in terms than is the petition.  "A court does not possess the power to change by instruction the issues which the pleadings permit." [Bank v. Murdock, 62 Mo. l. c. 73.]

And an instruction is equally erroneous whether it enlarges or restricts the issues made by the pleadings. [Mansur v. Botts, 80 Mo. l. c. 658.]

Of course, the petition might be amended so as

to conform to the facts shown, and thus plaintiff would be able to reap the full benefit of his evidence, but such was not done in this case. The petition should have been amended to conform to the state of facts proven. [Budd v. Hoffheimer, 52 Mo. l. c. 303.]

There was no necessity of the plaintiff, being a passenger, going into details, as to the exact manner in which he was hurt, but having done so he is bound by the statements of his petition. [Hamilton v. Crowe, 175 Mo. 634.] By the petition he not only charges certain negligent acts of the defendant, but he avers that such negligence caused him to be injured in a certain specific place and manner duly pointed out in the petition. No claim that he was injured at any other place or manner than is thus stated. By his own act, he prescribes the issues. Why plaintiffs persist in specific allegations, both as to acts of negligence and other matters, in cases where the doctrine *res ipsa loquitur* applies, is a matter we do not understand. They will do so, however, and when they do must take their chances upon the increased opportunities for errors to creep into the record.

When this instruction went beyond the terms of the petition as pointed out by my brother, it became faulty, and because plaintiff by his petition has voluntarily limited the issues. By the petition he not only presented the issue of defendant's negligence, but he has seen fit to limit the additional issue as to the place whereat, and the manner in which that negligence brought about his injury. He need not have thus limited the latter issue, but having done so, he is bound by it so long as he does not by leave of court amend his pleading. [Hamilton v. Crowe, *supra;* Budd v. Hoffheimer, *supra.*]

II. I concur in the result for an additional and very potent reason. To my mind this judgment is grossly excessive. If all other questions were out of

the case it should be reversed and remanded for re-trial that the ends of justice may be subserved. Whether the jury was inflamed by the proof (un-objected to, it is true, but incompetent, nevertheless, under the pleadings) of the alleged loss of sexual powers, we cannot say, but it does remain a fact that the verdict is much in excess of what should have been awarded. Carriers who negligently injure pas-sengers should be held in substantial damages for all such injuries, but not for inflamed verdicts.

For these reasons, I think the cause should be reversed and remanded.