Lüeders, J.
Charlotte Murray on the 18th day of January, 1905, executed a paper writing purporting to be her last will and testament, disposing of real and personal property, and by the terms of this paper writing Elma Murray now Elma M. Sandifer, daughter of Wilbur IT. Murray, deceased, is residuary'devisee. Said paper writing is produced in this court for probate.
On the 27th day of January, 1911, Charlotte Murray executed a second paper writing purporting to be her last will and testament; and this paper writing has not been and can not be produced, and it is claimed that it was either lost or destroyed " through no act or fault of Charlotte Murray.
On the 12th day of April, 1912, Charlotte Murray was adjudged by this court to be of unsound mind; and thereupon a guardian was duly appointed to take care of and manage her estate.
On the 24th day of May, 1915, and while under guardianship out of this court, there was' endorsed on the back of the paper writing dated January 18th, 1905, in Charlotte Murray’s own handwriting, the following:
“It is my wish that my mother’s share shall go to my sister, Miss Harriet ITinchy.”
This indorsement purports to be the revocation of a legacy contained in the 1905 will, and in favor of a certain legatee, and substituting another and different legatee. This indorsement or revocation bears Charlotte Murray’s signature, but is devoid of witnesses.
On the 7th day of July, 1916, Charlotte Murray was restored to her rights and reason and her disability removed by order of the common pleas court, which order also vacated the guardianship.
On or about the 4th day of June, 1917, Charlotte Murray departed this life.
*307 It is now sought to admit to .probate and record:
First. The paper writing dated January 18th, 1905, as Charlotte Murray’s last will and testament, together with the indorsement referred to herein substituting a different legatee;
Second. To establish the existence and subsequent loss or destruction of the second paper writing dated January 27, 1911, and also to establish its contents; and when established to have such paper writing admitted to probate and record as the last will and testament of the deceased.
Section 10543, General Code, provides as follows:
‘ ‘ The probate court may admit to probate a last will and testament which it is satisfied was executed according to the provisions of law in force at the time of its execution, and not revoked at the death of the testator, when such original will was lost, spoliated, or destroyed, subsequent to the death of such testator, or after he became incapable of making a will by reason of insanity, and it can not be produced in court in as full, ample, and complete a manner as the court now admits to probate last wills and testaments the originals of which are actually produced therein for probate. ’ ’
By Section 10544, General Code, it is provided that notice shall be given to all persons whose interest it may be to resist the probate of a lost, spoliated or destroyed will; and
By Section 10545, General Code, it is provided that the court shall cause the witnesses to such will, and such other witnesses as any person interested in having it admitted to probate desire, to come before the court.
Section 10546, General Code, provides that if upon such proof the court is satisfied that such last will and testament was executed in the mode provided by law in force at the time of its execution, that its contents are substantially proved, that it ivas unrevoked at the death of the testator and has been lost, spoliated or destroyed since his death, or his becoming incapable as aforesaid, such court shall find and establish the contents of such will as near as can be ascertained and cause them and the testimony taken in the ease to be recorded in such court.
It is sought under these sections to establish the contents and loss or destruction of and to admit the paper writing dated January 27th, 1911, as Charlotte Murray’s last will and testament.
*308 It must follow that if this paper writing is the last will and testament of the decedent, then the paper 'writing dated January 18th, 1905, is not her last will, and probate thereof must be refused.
The first question to consider is, whether there is a second will; and if so, had it a legal existence at the time of the death of the testator ?
The burden of proof to establish this is on the proponents. The terms “lost,” “spoliated” or “destroyed” as used in the General Code are synonymous terms, yet there may be a discrimination between them: a lost will would be one that can not be found; a destroyed will would be one that can not be produced; a spoliated will might be a will mutilated, partly lost, or partly destroyed; but the proof required to establish ,a spoliated, lost or destroyed will is identical.
There is evidence tending to show that on the 27th day of January, 1911, Charlotte Murray executed in due form a will; and that this will was at that time in her possession and custody. There is no evidence as to how long it w.as in her custody or control, and no evidence that this will was in existence at the time of her death on June 4th, 1917, or that it was lost or destroyed after her death. As this proof is pre-requisite under the General Code, the proponents of the alleged second will in that respect have failed to establish a wall of the date of January 27th, 1911.
The failure to produce such wall or to account for its non-production raises the presumption that the will was destroyed by the testator.
In the case of Behrens v. Behrens, 47 O. S., page 323, the court held that
“Where a wall, once known to have existed and to have been in the custody of the testator, can not be found after his decease, the legal presumption is that the testator destroyed it with the intent to revoke it.”
This case is followed in: William v. Miles, Nebraska Reports 68, page 463; Hamilton v. Crowe, 175 Mo., 634; In re Bell Estate, 13 S. D., page 475; In re Miller Estate, 49 Oregon, page 452; *309 In re McCoy Estate, 49 Oregon, page 579, and In re Mary Sinclair’s Will, 5 O. S., 291, the court in construing several questions said:
‘ ‘ The legislation of this state as it now exists does not permit a will lost, spoliated or destroyed to be established unless it existed subsequently to the death of the testator. ’ ’
Judge Swan in deciding the case, further said:
“The General Assembly deemed it impolitic, as opening the door to imposition and perjury, or unnecessary to permit wills lost or destroyed before the decease of the testator to be established.”
See also Cole v. McClure et al, 88 O. S., page 1.
It must be, however, understood that if the proof had shown that this paper writing was lost or destroyed prior to the death of the deceased, but without her knowledge or against her will, it could be offered for probate. But there is no evidence to show that fact. It is, therefore, immaterial what the contents were of this paper, and whether all the statutory requirements as to its execution as a will had been complied with.
The application for probate of the so-called 1911 will, is refused.
The next question to consider is, whether the paper writing dated January 18th, 1905, is the last will and testament of the decedent.
It is contended that the decedent having executed a second will on January 27th, 1911, that under Section 10562, General Code, the destruction or loss of the second will did not revive the first will and that the. testator died intestate.
For the solution of this contention we must look to Section 10562, which provides as follows:
“After making a will, if the testator duly makes and executes a second will, the destruction, canceling- or revocation of the second will shall not revive the first will unless the terms of such revocation show that it was his intention to revive and give effect to the first will, or after such destruction, canceling or revocation, he duly republishes his first will.” R. S., Section 5960.
*310 On first examination the contention would seem to be well taken, but does the section in fact warrant such construction as contended ?
In the construction of the statutes, thé legislative intention is to be determined and effect given thereto. In doing so, courts must regard the object to be ascertained and the mischief guarded against.
Statutes should be construed so as to be given a reasonable meaning and operation and courts will not permit a law general in its nature to deprive one of any'of his rights, legal, equitable or statutory unless such general law says so.
A construction leading to absurd consequences will be deemed not intended. The right to make a will is a statutory right. Without the statute, there would be no power to dispose of property after death. The statute does not'limit the number of wills; one has tho right to execute as many wills as he chooses; nor is there ,a restriction upon the testator in destroying any or all wills he may make, provided only that he is of age and under no legal disability. At the time of any testator’s death there may be in existence one of more wills; but the one to be effective must be his last will — not necessarily last in date but in force. Legal wills executed after the execution of the first, revoke all pre-" vious wills on the death of the testator, but not before his death. There can not be at the time of the death of the' testator more than one legal will in force.
With these observations, let us consider the questions before us:
We find her will dated January 18th, 1905, is her first will. Let us assume that she made a second will dated January 27th, 1911. This second will can not be produced nor is there ,any evidence that it was in existence at the time of her death or that it was lost or destroyed after her death. A legal presumption therefore arises that the testator destroyed the will; that it is no longer in existence, and was not at the time of her death.
There is, therefore, no second will in contemplation of law in existence upon which any statute could take effect.
A second will as contemplated by Section 10562 must have a legal existence at the time of the death of the testator, but which was, after his death, lost or destroyed.
*311 When it is so made to appear, then such loss or destruction would revive the first will. Why ? Because the testator intended that the second will shall be in force and not the first will.
Section 10543 has reference to a will lost, spoliated or destroyed subsequent to the death of the decedent or after he became incapable of making a will by reason of insanity.'
Section 10546 in substance provides that a will unrevoked at the death of a testator which has been lost, spoliated or destroyéd since his death, or his becoming incapable as aforesaid, may, on proper proof, be admitted to probate.
All these sections must be read and considered in connection with Section 10562. It must be borne in mind that such loss, spoliation or destruction of a will after the death of the testator could not become the act or fault of the testator. In other words, he is to be protected against the revival of his first will and to give force to his second will, unless upon proof it is shown that it was his intention to revive and give effect to his first will.
But, when, as in this case, there is no second legal will in existence at the time of the death, it must follow that Section _10662 does not and can not affect the first will.
It must be apparent that Section 10562 does not contemplate a will destroyed, cancelled or revoked by the testator or destroyed by him after he became incapable of making a will by reason of insanity, nor does it contemplate a will destroyed after his death
It can not be possible that the will destroyed by the testator and, therefore, legally not in existence at the time of his death, a will that has no force or effect and never had, can devitalize a valid .and existing will.
It will also be observed that Section 10562 does not provide any mode showing the intention of the testator to revive the first will, or the manner of republishing the same. It would, therefore, depend upon proof satisfactory to the court showing such intention.
The fact that Charlotte Murray destroyed the will of January 27th, 1911, and not the first, although she could have done so, having possession of the same, and that on May 24th, 1915, in *312 her own handwriting over her own signature undertook to change a legacy which she had given in her first will by making an indorsement to that effect upon the 1905 will, are strong circumstances showing that it was her intention to revive her will, and was, in a certain sense, a republication.
It is true that at the time she made this indorsement she was under legal disability, but that simply goes to the validity of the indorsement and does not necessarily affect her mental capacity. This circumstance negatives the theory that the second will was in existence at that time, and makes it apparent that ^she did not intend to die intestate.
The decedent was adjudged insane on the 12th day of April, 1912, and remained under legal disability until July 7th, 1916. It may be claimed that during this period she destroyed the second will; were that an established fact, which it is not, then the destruction of the second will by her would not have revoked it, and the second will would be her last will; nor does a presumption of its destruction during that period .aSseT^TTtKerwise, it would exclude the period which elapsed after she had beentrestored to reason and the time of her death — about eleven months.
V. We next come to consider the indorsement made by the testator on the will of January 18th, 1905. This indorsement may be considered as a supplement to, and treated as .a codicil to the will, for it does not revoke the will but seeks, only to change a bequest made, leaving all the other provisions in force.
A codicil, in order to be effective, must be executed with the same formality, and the testator must exercise the same power and capacities, as is requisite in the execution of a valid will.
This codicil has not the requirements of a valid will. It has no witnesses. Then again, it was made and signed by the testatrix "while under a legal disability.
The probate of this codicil will be refused.
Upon proper proof as to the execution and testamentary capacity of the testatrix on January 18th, 1905, the will of that date will be admitted to probate and record.